# THE AETNA LIFE INSURANCE COMPANY *vs.*
# WILLIAM J. S. MILLAR.

*Health Insurance—Untrue Statement in Application—Questions as to Good Faith of the Insured and as to the Materiality of the Statement to the Risk and as to the Time of Contracting the Disease for the Jury.*

Under Code, Art. 23, sec. 196, an untrue statement made in an application for life, accident, etc., insurance, although declared to be a warranty, does not avoid the policy, unless such statement was not made in good faith by the applicant, or it related to some matter material to the risk.

When the bad faith of the applicant, or the falsity and materiality of misrepresentation, is shown by clear and uncontradicted evidence, the Court may so rule as a matter of law, but when the evidence upon these questions is conflicting they should be submitted to the jury.

Defendant company's policy, by which it agreed to pay to the
plaintiff a certain weekly sum during a disability caused by
illness, provided that the statements made by the plaintiff in
his application were warranted to be true, and also that the
insurance should not cover a disability resulting from any
disaese contracted within fifteen days after the date of the
policy.  In an action thereon, plaintiff alleged that on July
2nd, 1908, he was operated on for a disease called mastoiditis,
and was in consequence disabled for thirteen weeks.  The
defendant alleged that in his application the plaintiff had
warranted that he had not received medical attention for
two years preceding; that this statement was false and mate-
rial to the risk and that the policy was thereby avoided.  The
evidence showed that before signing the application the plain-
tiff told the defendant's agent that he had consulted a physi-
cian about an earache which he supposed resulted from a
cold, but had received no treatment or medicine from the
physician; that the agent told plaintiff that the answer "no"
to the question whether he had received medical atten-
tion within the past two years, was correct, because that
question did not refer to such a consultation, and that he
had relied upon that assurance in making such answer.  The
evidence also showed that the plaintiff had consulted his fam-
ily physician several times in the month preceding the appli-
cation concerning an earache; that such trouble was decep-
tive and plaintiff apparently got well; that at the instance of
his physician plaintiff consulted a specialist in ear diseases,
who found an inflammation in the drum of the plaintiff's
right ear and advised an incision, to which plaintiff refused
to submit; that on May 25th the drum ruptured, the pus
discharged and the pain disappeared, so that the plaintiff be-
lieved himself to be cured.  The policy sued on was issued on
June 15th, and within a little more than two weeks there-
after the plaintiff began to have a pain in his ear, and on
July 2nd he was operated on for mastoiditis.  The medical
evidence was also to the effect that this disease was proba-
bly the result of the previous ear trouble of plaintiff, which
had remained latent, but might have been caused by a new
infection.  Plaintiff had not been informed in May that he

had mastoiditis and he did not then regard his trouble as a serious one. *Held,* that upon this evidence it was properly left to the jury to find whether the plaintiff acted in good faith in stating in the application that he had not been attended by a physician, and whether that statement was false, and was material to the risk, and whether the plaintiff's mastoiditis was contracted within fifteen days from the date of the policy.

*Held,* further, that a prayer offered by the defendant was properly rejected which ignored the question of plaintiff's good faith in making said statement, or whether the ailment in May was temporary or permanent, or whether he had entirely recovered from it before the policy was issued.

When the question is whether an answer by an applicant for insurance was made in good faith, he may testify that, although a physician had told him that what appeared to be a slight ailment might get serious, yet, when he was relieved of the pain, he believed that the physician was mistaken.

*Decided November 16th, 1910.*

Appeal from the Superior Court of Baltimore City (Sharp, J.).

The cause was argued before Boyd, C. J., Briscoe, Pearce, Schmucker, Burke, Thomas, Pattison and Urner, JJ.

*Geo. Weems Williams* and *William L. Rawls,* for the appellant.

*Julius H. Wyman* and *John L. V. Murphy,* for the appellee.

Burke, J., delivered the opinion of the Court.

This is the defendant's appeal from a judgment rendered against it in the Superior Court of Baltimore City. The suit was in *assumpsit,* and was based upon a health benefit

certificate issued by the appellant to William J. S. Millar, the plaintiff. The declaration alleged that the defendant, in consideration of the sum of sixty dollars paid by the plaintiff to it, issued to him the policy or certificate sued on, whereby it agreed to pay to the plaintiff certain sums of money according to a schedule of operations attached to the policy, and a further sum for each week during the disability of the plaintiff resulting from illness. It further alleged that on the second day of July, 1908, the plaintiff was operated on for a disability mentioned in the schedule, to wit, Mastoiditis, and was disabled from performing his usual business duties for a period of thirteen weeks. It also alleged that the plaintiff had given the defendant notice of said illness and operation according to the requirements of the policy, and had in all other respects performed all the obligations imposed upon him by the contract of insurance; but that the defendant had refused to pay him the amount due him under the policy. The amount claimed was three hundred and seventy-five dollars.

To this declaration the defendant interposed the general issue pleas, and two special pleas, numbered three and four. The third plea alleged that the plaintiff in his application for the policy mentioned in the declaration made the statement that he had not received medical attention within two years preceding the making of the application, which statement the plaintiff warranted to be true; that that statement was made a part of the contract of insurance and was relied upon by the defendant; that in fact the plaintiff had received medical attention within two years preceding the making of the application, as he well knew. It further averred that these facts constituted a breach of warranty as to a matter material to the risk, and avoided the policy. The fourth plea is similar to the third, with one exception. It omits the allegation found in the third plea, that the untrue statement alleged to have been made was knowingly made by the plaintiff. The plaintiff joined issue upon the first and second

pleas and replied to the third and fourth. The replication denied the plaintiff having received medical attention within the period mentioned, and averred that no statement contained in his application for insurance constituted a breach of warranty as to a matter material to the risk and in avoidance of the policy. Issue was joined upon these replications and the case proceeded to trial, resulting in a verdict and judgment for the plaintiff for the full amount claimed.

The issues raised under the third and fourth pleas, viz, the falsity and materiality of the statements set out in these pleas, present the only real questions in the case. The record contains two bills of exception—one relates to the ruling of the Court upon a question of evidence, and the other to its action on certain prayers and special exceptions filed by the defendant. At the conclusion of the whole case the Court granted two prayers on behalf of the plaintiff, and granted the defendant's second prayer. It overruled the defendant's special exception to the plaintiff's first and fourth prayers, which were the ones granted, and refused the defendant's first, third, fourth, fifth, sixth and seventh prayers. This action of the Court is presented for review by the second exception. The jury were instructed by the plaintiff's first prayer that if they found that the defendant executed the policy of insurance referred to in the evidence and delivered the same to the plaintiff, and that the plaintiff paid to the defendant all premiums payable thereon, and complied with all the undertakings and stipulations to be performed on his part in said policy; and if they further found that during the term mentioned in said policy the plaintiff was operated on for the disability referred to as Mastoiditis in the schedule attached to the policy, and further found that said disability was not contracted within fifteen days after noon on the day of the date of the policy and was disabled from prosecuting any and every kind of business pertaining to his occupation for a period of thirteen weeks, as testified to; and further found that said plaintiff exhibited and

delivered to the defendant notice of said illness and operation and proper and sufficient proof of the same within two months from the termination of said thirteen weeks and before the bringing of this suit, then the plaintiff was entitled to recover, unless the jury found from the evidence that the application for the policy on the part of said plaintiff contained some misrepresentation or untrue statement of facts not made in good faith by said applicant, or unless the jury found that said application contained some misrepresentation or untrue statement on some matter material to the risk.   By the plaintiff's fourth prayer the jury were told that if they found the facts set forth in the plaintiff's first prayer, and further found that the plaintiff informed the agent of said company that he had on one occasion an earache concerning which he had consulted a physician, but that he had received no treatment or medicine from said physician, and that the agent advised the plaintiff that the statement in the application, to wit, "I have not received medical attention within the past two years except as herein stated," did not refer to such consultation, and that the agent filled in the word "No," and that the plaintiff, relying upon the statement of the agent of the defendant, signed the application, believing said conclusion "No" to be the truthful answer to the statement, then their verdict should be for the plaintiff.

The jury were told by the defendant's second prayer that if they found that the plaintiff contracted the disease mentioned in the evidence and therein described as Mastoiditis, and that said disease was contracted by the plaintiff prior to the issuance of the policy of insurance sued on in this case, or if they found that said disease was contracted within fifteen days after the issuance of the policy, then the verdict of the jury must be for the defendant.   The defendant's rejected prayers will be noticed later.   The correctness of these instructions must be determined by the facts disclosed by the record, and those facts, so far as they bear upon the

issues raised by the pleadings, will now be stated. The policy, which is contained in the record, recites that the defendant, in consideration of the premium of sixty dollars and of the statements in the schedule of warranties indorsed thereon, which statements the policy declares the plaintiff warrants to be true, insured the plaintiff for the term of one year from the 15th day of June, 1908, commencing and ending at 12 o'clock noon, standard time; first, against disability or death resulting directly and independently of all other causes from bodily injuries, &c.; and secondly, against disability from illness as defined in the policy. The illness from which the plaintff suffered is not excepted by the terms of the policy; but by section 22 of the policy it is provided that insurance does not cover disability resulting from any disease contracted *within fifteen days from noon of the day the policy is dated.* The surgical operation performed upon the plaintiff is within the terms of the policy.

The application of the plaintiff, which is made a part of the policy, contains the following statement: "I have not received medical attention within the past two years, except as herein stated. No." This statement the defendant insists was false and material, and avoids the policy. The statement must be treated as a warranty, but its legal effect is modified and controlled by the statute of this State upon the subject. In *Monahan* v. *Mutual Insurance Company,* 103 Md. 155, we said: "There is a broad and material distinction between a warranty and a representation. A representation is not a part of the contract, but is collateral thereto, while a warranty is a part of the contract. In consequence of this, while the falsity of a representation is not a ground for avoiding the contract, unless material to the risk, a warranty as to any fact will preclude an inquiry as to the materiality of that fact. 16 *Am. and Eng. Ency. of L.* 932. The legislation of many of the States, including Maryland, has modified the harsh rule respecting warranties in this class of contracts, and has swept away a group

of merely technical objections to a recovery on life insurance policies (*Md. Cas. Co. v. Gehrmann*, 96 Md. 648) by declaring that "whenever the application for a policy of life insurance contains a clause of warranty of the truth of the answers therein contained, no misrepresentation or untrue. statement in such application, made in good faith by the applicant, shall effect a forfeiture or be a ground of defense in any suit brought upon any policy of insurance issued upon the faith of such application, unless such misrepresentation or untrue statement relate to some matter material to the risk." *Section 196, Art. 23, Code of 1904.* What is a matter material to the risk is ordinarily and generally for the jury to determine. Under the pleadings and evidence, the controverted questions presented at the trial were, first, the good faith of the plaintiff in making the statement complained of; secondly, was the statement false; thirdly, did it relate to some matter material to the risk; and fourthly, was the disease from which the plaintiff suffered contracted within fifteen days from noon of June 15th, 1908, the date of the policy? The lower Court in the instructions granted submitted these questions to the finding of the jury. In this it followed the general and ordinary rule. It is ordinarily the province of the jury to determine the falsity and materiality of the misrepresentation, and the burden is upon the defendant to satisfy the jury of the truth of these defenses. Where the bad faith of the applicant, or the falsity and materiality of the misrepresentation is shown by clear and uncontradicted evidence, the Court may so rule as a matter of law; but where the evidence upon these questions is conflicting or doubtful they should be submitted to the jury. *Fidelity Mutual Life Insurance Company v. Ficklin,* 74 Md. 173; *Dulaney v. Fidelity Company,* 106 Md. 17; *Mutual Life Insurance Company v. Rain,* 108 Md. 353; *Bankers' Life Insurance Company v. Miller,* 100 Md. 1; *Maryland Cas. Co. v. Gehrmann,* 96 Md. 634.

We have examined the evidence in the light of the principles stated, and find no error in any of the rulings of which the appellant can justly complain. It is to be noticed that it is not pretended that the plaintiff was afflicted by any trouble except the ear trouble mentioned in the evidence, and it was upon the nature and extent of this one trouble alone that the defendant relied under the warranties contained in the contract of insurance to defeat a recovery. This is important to be borne in mind, in that some of the defendant's prayers, which will be presently noticed, attempted to import into the case a consideration of other disabilities of which there was no evidence. To have permitted this would have tended to mislead the jury. The plaintiff prior to May, 1908, had been a healthy man, and had never suffered from any serious sickness. In the early part of May of that year he was attacked by an earache caused, as he supposed, by a cold. He called in his family physician, Dr. A. K. Bond. Dr. Bond testified as follows as to the plaintiff's previous health, and the nature of the trouble for which he treated him: "Mr. Millar has been a strong man; he has been a healthy man; I have attended in his family; I don't know that I have given him any treatment, certainly for nothing serious, and on the 17th of May, 1908, as I learned from my books, he called on me to see me concerning the ear trouble; I paid him six visits, and that lasted according to my book from the 17th to the 23rd of May, 1908; now the nature of that trouble was such that it was very deceptive; I suspected that it might be a more serious trouble involving possibly the mastoids; the danger is that the trouble is so slight that the patient does not think he is sick and does not keep on coming to the doctor, but thinks he is a well man until later when the mastoids get affected; so in order to protect myself as well as him I warned him that he better see a specialist; the disease is not an open frank disease, but of a deceptive nature, that sneaks along until it bursts out in mastoid inflammation; I judge from the evi-

dence that that is just what it did; it apparently got well, and then it broke out again; I attended him for six visits and then I turned him over to Doctor Woods, and I knew nothing more about the case until I heard he had been operated on." Doctor Bond was asked what reason he gave the plaintiff for turning him over to a specialist, and he replied: "The reason I gave is there was an inflammation inside the drum of the ear, evidently from the slight nature of the pain and the nature of the persistence, and I do not treat diseases behind the drum of the ear, and therefore I sent him to a specialist. I warned him that he must go to a specialist, because that class of diseases is apt to go on and finally get into the mastoids." He further testified that when the disease gets into the mastoids it is known as mastoiditis; that he knew the disease might be of that nature; he thought the drum had broken during his treatment, relieving the inflammation for a time and giving relief from pain, and making the plaintiff thnk that he was a well man. He further testified that the plaintiff might have gone on and not had the disease; that it was only a belief in his mind that he might have trouble, and therefore he turned him over to a specialist; that it was natural for the plaintiff to think that he was cured, and when the pain left he would think so himself if he were not a physician.

Doctor Hiram Woods testified that he first saw the plaintiff at his office on the 21st of May, 1908; that he had an acute inflammation of the drum of the right ear, and as well as he could see from the outside there was pus pent up in the ear. He advised the plaintiff to permit an incision of the drum head to discharge the pus, but told him that the probability was that within a few days, after more pain, the drum head would rupture, and that no one could assure him that while he was waiting some more serious complication might result. The plaintiff refused to submit to the puncturing of his ear drum, and about the 25th of May, 1908, it was ruptured, the pus discharged, the pain disappeared, and

he believed himself to be entirely cured, and according to the evidence of the physician the plaintiff then had no reason to think he had any diesase.

On the 12th or 13th of June following, at a time when the plaintiff according to his own testimony was in good health, he was approached by an agent of the appellant and solicited to take out the policy sued on. The plaintiff was averse to taking the policy, stating that he did not feel the need of a sick benefit policy. The agent asked him if he had never been sick, and the plaintiff replied that he had never been sick, and "outside of trifling circumstances" he had not had a doctor to attend him for anything of any consequence since he was three years old, and that he had never felt the necessity of taking out a sick benefit policy. He told the agent that a few weeks before he had contracted a cold which had brought about what he supposed was a severe earache; but that he was then free from pain and was then in good physical condition. The agent did not regard the ear trouble from what the plaintiff told him of any importance and the policy was issued. The testimony of the plaintiff as to his good health at the time of the application and as to the circumstances under which the policy was issued was corroborated by Mrs. Millar and Gustave Wirth, Jr. Mrs Millar testified that at the time the application was made her husband was not suffering, and did not give any indication of pain in his ear, and that he told the agent that he had never been seriously sick since he was three years old, and spoke of a slight earache he had had sometime before, but which had entirely disappeared. The plaintiff did not disclose the full extent of the attention rendered by Doctor Bond, nor did he disclose the fact that Doctor Woods had advised the puncture of the ear drum to relieve the accumulated pus. The answers to the questions contained in the application were filled in by the agent from information derived from the plaintiff.

It is apparent we think that the plaintiff did not regard the ear trouble as serious or permanent, and that he considered himself a well man at the time the application was made. The facts we have stated were sufficient to have taken the case to the jury on the question of the plaintiff's good faith.

On the night of June 30, 1908, the plaintiff began to have a severe pain in the ear, and on the following morning he went to a hospital and was there operated on by Doctor Woods on July 2nd, 1908, for Mastoiditis, and was totally incapacitated from performing his duties from July 2nd to November 2nd, 1908.

It is said in 25 *Cyc.* 812, that "answers as to diseases, injuries, or physical condition are not rendered untruthful by failure to disclose temporary derangements, ailments or injuries existing or pre-existing which do not affect the general health and are not serious in their nature." If, therefore, the ear trouble from which the plaintiff suffered prior to making the application was, as he supposed, merely temporary, and had entirely passed away, leaving his general health unimpaired, then the answer complained of was not untruthful within the meaning of the law; if, on the other hand, that trouble was serious and there was an infection which resulted in Mastoiditis on the night of June 30th, 1908, that condition would avoid the policy, because the answer contained in the application would be both false and material to the risk. If such falsity and materiality had been shown by clear and convincing proof, it would have been the duty of the Court to have directed a verdict for the defendant, otherwise these questions should have been submitted to the determination of the jury.

It does not certainly appear that the plaintiff had any serious disease prior to the application, or that he had at that time an infection which resulted in Mastoiditis. Neither Doctor Bond nor Doctor Woods told him he had that disease prior to the date of the application, nor did either of

them testify that he had that disease at that time. The most they would say was that the ear trouble from which he was suffering might result in something more serious. Whether the Mastoiditis which developed on the night of June the 30th was the result of the prior ear trouble, or whether it was a reinfection was under the circumstances a question for the jury, and not for the Court to decide. Doctor Woods, who was called by the defendant, said that Mastoiditis is an inflammation of the cells behind the ear, and that there were two ways of explaining how the plaintiff contracted that disease six weeks after the original ear trouble: "One way was that there was an infection at the time of the original ear trouble back in the Mastoid, which remained latent and for some reason or other became active at the end of six weeks; the other possibility is that the ear trouble which drained out by spontaneous rupture on May 25th, was all well, and that he had a reinfection; of the two, I think the former the more probable."

Our conclusion from the consideration of the whole record is that all the issues, of fact raised by the pleading were properly submitted to the jury under the granted prayers, and that the special exceptions filed to the plaintiff's first and fourth prayers were rightly overruled, as there was evidence in the case tending to support the hypotheses of facts stated in them. We do not think the plaintiff's fourth prayer in any way prejudiced the defendant. It was really unnecessary, and was of little benefit to the plaintiff, as he would have been entitled to recover irrespective of this prayer, if the jury found the facts stated in his first prayer. We do not understand the fourth prayer as setting up the question of estoppel. It was merely an instruction, to be taken by the jury in connection with the facts submitted in the first prayer, on the question of the good faith of the plaintiff.

What we have said disposes of the questions raised upon the rejection of the defendant's prayers. Its first prayer

sought to withdraw the case from the jury, and was properly refused for the reasons stated. The defendant was not injured by the refusal of its third, fourth, fifth and seventh prayers, because its second prayer, which the Court granted, gave it the full benefit of the defenses relied upon in these prayers. Its fifth prayer asserts the proposition that "inasmuch as it appears from the uncontradicted evidence that the plaintiff prior to the issuance of the policy sued on failed to inform the defendant or its agents that he had been visited professionally by Doctor Bond and had been treated by him for ear trouble, and that at the advice of Doctor Bond, he, the plaintiff, had consulted Doctor Woods and that Doctor Woods had advised an operation, the verdict of the jury must be for the defendant." This prayer entirely ignored the question of the plaintiff's good faith, or whether his ailment was temporary or permanent, serious or trifling, or whether he had entirely recovered before the policy was issued. It was therefore properly rejected. The sixth prayer submits to the jury the finding of substantially the same facts stated in the fifth, and asserted as a legal conclusion that the plaintiff could not recover if the jury found those facts to be true. This prayer was open to the same objection as the fifth, and the Court committed no error in refusing it.

The only remaining question is presented by the first exception, and relates to a question of evidence. We see no possible objection to the evidence embraced in this exception. It bore directly upon one of the issues in the case, viz, the good faith of the plaintiff. After having testified as to the character of his illness in the early part of May and of his visit to Doctor Woods, the plaintiff was asked and answered the following questions:

"Q. He (meaning Dr. Woods) told you that it might get serious?

A. He said there was a possibility of its developing into something more serious.

Q. As a matter of fact, it got well?

A. It got well; better than I am today even.

Q. And you had no pain or any recurrence of that trouble at all?

A. No, sir.

Q. State whether or not you believed, the pains having left you, that Doctor Woods was mistaken?

A. I certainly did."

This last question and answer constitute the first exception. If a material representation or untrue statement had been made, it would have avoided the policy, no matter what the plaintiff may have thought or believed about the opinion of Doctor Woods. But the evidence was proper to be considered by the jury as explanatory of his failure to disclose fully all that had occurred between Doctor Woods and himself. It was said in *Fidelity Mutual Life* v. *Ficklin, supra:* "That the inquiry in reference to the answers in the application for insurance ought to be not only whether they were true, but also whether they were made in good faith, and whether they related to some matter material to the risk * * * . The statute concerning warranties introduced two new questions for determination before the contract could be declared invalid, viz, the good faith of the applicant in making his statement and the materiality to the risk of the matters involved in them. Good faith and fraud are questions of intent. In investigating intention, it is impossible to exclude the circumstances under which an act was done. Purposes, motives, objects and inducement would all be involved in obscurity unless we could be informed of the accompanying facts which mark the character of the transaction."

Finding no reversible error in any of the rulings, the judgment will be affirmed.

> *Judgment affirmed, with costs above and below.*