# R. GORDON DULANY *vs.* THE FIDELITY AND CASUALTY COMPANY OF NEW YORK.

*Accident and Health Policy—Proof of Answers Actually Made by Applicant—Waiver of Condition—Evidence—Time of Bringing Suit—What is Confinement to a House—Materiality of Representation.*

When it appears from the answers attached to an accident and health policy, and declared to be warranties, that the applicant stated in reply to a question that he had not received any medical or surgical attention during the preceding seven years, he is entitled to show in an action on the policy, what answer he did actually make to the question and if the facts relating to the medical attention he had received were stated to the agent of the insurer, and that agent undertook to determine whether the facts were material to the risk, and instructed the applicant to write the answer as it appeared, the insurer is estopped to set up the facts so stated as a defense to the action.

The provision in a policy that no agent has authority to change it or waive any of its provisions, relate to the stipulations of the contract itself, after it has gone into effect, and does not apply to the conditions concerning the inception of the contract, when it appears that the agent delivered the policy and received the premiums with full knowledge of the facts of the case.

A letter from plaintiff's attorney to the manager of an insurance company, prior to the institution of the suit, in reply to a letter from the manager to whom the claim had been referred for adjustment, is not admissible in evidence, when no adjustment was made and when offered only to show that a personal interview was requested.

An accident and health policy provided that the insured should receive a certain sum per week during the existence of a disability resulting from accident and also a certain sum per week during disability resulting

from disease, necessarily confining him to the house. The policy provided that legal proceedings for the recovery should not be brought before the expiration of three months from the date of filing final proofs. The insured made a claim for a disability resulting from hernia alleged to have been caused by an accident. The insurer contended that the hernia was the result of disease and not accident, and should be subject to the provisions of the policy relating to disease. *Held*, that under these circumstances, the stipulation of the policy limiting the time within which suit should be brought was waived.

When a person suffering from tuberculosis spends his days upon the porch or veranda of a house in pursuance of the directions of his physician and leaves it only occasionally for the purpose of going to see his physician, he is confined to the house, within the meaning of a policy of health insurance, which provides for the payment of a weekly sum during the period when he shall be necessarily confined to the house.

In an application for health insurance, an applicant stated that he had received no medical attention for the past seven years, and this statement was made a warranty. The evidence in an action on the policy showed that he had been treated during that period for a throat trouble, not serious in its nature. *Held*, that the materiality of this representation was a matter for the jury, and it was erroneous to instruct them that this breach of the warranty was, as a matter of law, material to the risk.

*Decided April 26th, 1907.*

Appeal from the Superior Court of Baltimore City (STOCK-BRIDGE, J.)

The cause was argued before BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*Bernard Carter* and *George T. Mister* (with whom was *Beverly W. Mister* on the brief), for the appellant.

The objection that the action was prematurely brought is applied by the defendant only to the plaintiff's claim for indemnity for hernia. It is admitted that, as his claim for indemnity for consumption was thrown out by the company and *all* liability therefor denied, the plaintiff had the right to bring suit for that part of his claim immediately. This has always been recognized by the Courts. *Norwich Trans. Co.*

v. *Ins. Co.*, 34 Conn. 561; *Phillips* v. *Society*, 120 Mich. 145; *Hosmer* v. *Ins. Co.*, 80 Mo. App. 419.

And the reason for this is, that the agreement not to bring suit within a specified time is made for the purpose of allowing the company such length of time to ascertain what its liability under the policy is. *Ins. Co.* v. *Davis*, 59 Kan. 525. But as soon as the company has reached a conclusion as to what its liability under the policy is, there can be no need for further time, whether that conclusion be a denial of *all* liability, or a denial of *all liability under a particular clause of the policy*.

In this case the company contended that the hernia was an *illness* and not the result of any accident, and should be treated as such, and that the sole and entire. extent of its liability therefor, was for the time the plaintiff was confined to the house, as prescribed by the Illness Clause of its policy.

And it denied all liability for the hernia as the result of any accident both in this letter and in a statement of Steele, its resident manager, to plaintiff's counsel.

The plaintiff all along contended the rupture was the result of an accident and that indemnity should be paid under the Accident Clauses of the policy, for such length of time as he should be disabled without reference to whether he were confined to the house, or not; as neither of these clauses contain that provision.    And the defendant admitted in its letter or June 7th, that it had received all the facts.    The plaintiff was therefore entitled to bring this suit at once.    *Allegree* v. *Md. Ins. Co.*, 6 H. & J., 408, 413; *Caledonia Ins. Co.* v. *Traub*, 80 Md. 214; *Cooley's Briefs on Law of Ins.*, vol. 4, p. 3959; *Phillips* v. *Ins. Co.*, 14 Mo. 220; *Baltimore Ins. Co.* v. *Loney*, 20 Md. 20, at page 40.

In *Ins. Co.* v. *Norment*, 91 Tenn. 1, the Court said, "When insurer waives proof of death and refuses to treat as to liability, save upon prejudicial conditions, suit may be brought at once, notwithstanding the clause postponing suit until ninety days after receipt of proof of injury."    See also *Lawson on Rights, Remedies and Practice*, secs. 2084, 2086.

. In addition to this, defendant asks the performance of an impossibility. Acknowledgment of proof of loss was made by the company on May 4th, so that suit could not be brought sooner than August the 5th, while the policy requires absolutely that suit must be brought within six months from the termination of disability, which the company claims in this case to have been February 2nd, making the limitation expire on August 2nd.

A representation is not material unless the knowledge or ignorance of it would naturally influence the judgment of the underwriter in making the contract at all or in estimating the degree and character of the risk or in fixing the rate of premium. 16 *Amer. & Eng. Ency. Law*, p 933.

The plaintiff testified that he had had a clearing of the throat for five or six years, a slight affection produced by smoking cigarettes; that in 1903 he went to Dr. Fleming, who sprayed his throat and nostrils maybe once a week; that he had had a cold in the head occasionally and maybe saw a doctor once or twice about it, but generally cured himself with quinine, and had had a slight case of grippe three or four years before the trial, which kept him in the house about three days. Dr. Thomas, who was present at the trial and heard plaintiff testify, stated that the chronic throat trouble plaintiff testified to having "*is common to nine-tenths of the people in this climate*; that this is a throat climate;" that plaintiff had nothing but throat conditions attributable to smoking; that we have an epidemic of grip here every year.

Where there is any element of doubt whether the matter was material, the question *must* be submitted to the jury. *Md. Cas. Co.* v. *Gehrmann*, 96 Md. 651; *Lutz* v. *Insur. Co.*, 186 Pa. 531.

The presumption is that trival ailments or injuries are not within the contemplation of the parties, and that the questions in the absence of words directing attention to them, are not asked with a view or purpose of ascertaining the existence of the same. 19 *A. & E. Ency. of Law*, 63; *Rupert* v. *Supreme Court*, 102 N. W. 715 (Minn., 1905); *Genung* v. *Metropolan Co.*, 60 N. Y. App. Div. 424.

The Court erred in refusing to permit the plaintiff witness on redirect examination to answer the question, what report the witness made to Harrison or to the company, in answer to the clause which follows letter O, and which reads, "I have not been disabled, nor have I received medical or surgical attention, etc., except as follows," and which is raised in the first bill of exceptions. The object of the question is apparent, namely, to have the witness explain to the jury and Court what statement he made to the agent in regard to the condition of his health within the preceding years. Had the witness been allowed to testify, he would have stated, that when the agent of the company solicited him, and presented an application blank for filling out, that he then explained to said agent that he had been treated by physicians for colds, for grip and a tickling sensation in his throat, caused by cigarette smoking, and years he was so treated, and which was testified in cross-examination by the witness; that upon stating these facts fully, the agent then said, that the proper answer to be made thereto was none, as they were not material to the risk; then he relied upon the agent's representation, and did not read the policy after it was delivered to him

The Court, in refusing to permit the question to be asked and answered, deprived the plaintiff of a legal right, to prove that the agent decided that the facts presented did not constitute such facts which would affect the risk of the policy. The policy had not then been issued, and the plaintiff, after the policy was issued, feeling satisfied that it was in conformity with the wishes of the agent, did not think it necessary to read it over. The agent evidently had, from his knowledge of his principal's method of ruling upon questions of that kind, knowledge whether the explanation made to him would be material to the risk, and upon his decision, the insured had perfect right to rely.

To deny the direct act or acts of its agent, especially in the matter arising at the time the application was made, would operate as a fraud upon the insured, even irrespective of the agent's motive for inducing the insured to consent to the form

of the answer. Whether the agent was influenced by an honest opinion or not, when he presented the application blank, would not make any difference, as they would produce the injury to the insured and would render it a proper subject for investigation for the jury. *McMaster* v. *N. Y. Life Ins. Co.*, 183 U. S. 26..

In an action on a policy evidence to show that applicant ·made true answers to the questions different from those inserted in the applications by the agent is admissible. *N. J. Ins. Co.* v. *Baker*, 94 U. S. 610; *Ins. Co.* v. *Mahone*, 21 Wall. .152.

When agents soliciting insurance undertake to prepare the applications of the insured, or make any representation to the insured as to the character or effect of the statements of the application, they will be regarded, in doing so, as the agents of the insurance company and not of the insured. *Union Ins. Co.* v. *Wilkinson*, 13 Wall. 222.

A policy containing a clause that no agent shall have power to waive any of the conditions in the policy, except such as by its terms may be endorsed thereon, does not apply to conditions relating to the inception of the contract, but merely operate to prevent agent from modifying the terms of the policy, at its issue. *Hartford, etc., Ins. Co.* v. *Keating*, 86 Md. 146; 16 *A. & E. Ency. of Law* (2 ed.), 943.

These authorities are intended to apply to soliciting agents receiving applications for insurance. The soliciting agents' possession of the application blanks clothes him with the supposed powers to decide questions involving material risk that may arise under the policy.

The prohibiting an agent from changing the provisions of the policy does not apply to the acts of such agent in directing the form of an answer to be made in the application blank. The doctrine of equitable estoppel applies against the insurer. *Carrollton, etc., Mfg. Co.* v. *American Credit Co.*, 124 Fed. Rep. 25; *Continental Insnr. Co.* v. *Chamberlain*, 132 U. S. 304; *Globe Insur. Co.* v. *Duffy*, 76 Md. 293.

Where the breach of a warranty or representation can be

fairly attributed to the fault of the agent, the company will not be heard to set up such breach as a defense to an action on the policy. *Planters' Ins. Co.* v. *Deford*, 38 Md. 382; *Fidelity, etc., Asso.* v. *Ficklin*, 74 Md. 172; *McKenzie* v. *Coulson*, L. R. 8 Eq. 368.

Thus a question which was raised as to whether chronic pharyngitis, but which was not disclosed in the application of the insured, was a sickness within the contemplation of the parties, should be left to the jury to decide. *Mutual B. Ins. Co.* v. *Wise*, 34 Md. 582.

It seems plain, that keeping in mind the intention of the parties in making the contract, that if the insured suffers from an illness, and the result of that illness is to totally disable him for a period of seven consecutive days, he is entitled to the indemnity given in the policy, and that the confinement to the house is only evidentiary and is the standard of proof the company has set up as being sufficient to show that the assured is totally disabled. When, therefore, confinement to the house would not be proper treatment for the disease, we submit, that proof of total disability unconnected with confinement is sufficient. Any other conclusion would lead the Court to the absolute absurdity of holding that although the contract provides for an indemnity for consumption, the insured could not recover it unless he followed a treatment which is the reverse of the accepted treatment for the disease, and which would clearly result in the disease gaining headway, and if continued, must produce fatal results.

A Court has said, in construing an identical clause, "The defendant's liability depends on the total disability of insured to labor because of sickness, and not upon his confinement to the house. Necessity for such confinement is made a material fact in determining whether disability to the required extent exists. It is an evidentiary fact, rather than a substantive fact, in the nature of a condition precedent." *Scales* v. *Assoc.*, 70 N. H., 490; *Travelers' Co.* v. *Duvall*, 74 S. W., 740.

Another Court, passed upon the same phrase and said, "The words 'confined to the house,' must receive a reasonable

constrnction.　The purpose of the policy was to indemnify the plaintiff against loss occasioned by inability to attend to his work on account of sickness.　A complete and enforced withdrawal from business or work was undoubtedly necessary under the policy." *Mutual Ins.* v. *Nancarrow,* 18 Colo. App., 274; See also *Hoffman* v. *Association,* 128 Mich., 323; *Travellers Ins. Co.* v. *Murray,* 16 Colo. App. 304; 4 *Cooley's Briefs on Ins.,* 3293.

In order that a person should be totally disabled within the meaning of the policy, it is not neccessary he should be in a state of absolute helplessness.　If common care and prudence require him to desist from his business·so long as was reasonably necessary to effect a speedy cure, he was disabled within the meaning of the policy.　*Young* v. *Ins. Co.,* 80 Me. 244; *Casualty Co.* v. *Hanson,* 79 Pac. 176, 178; *Thayer* v. *Ins. Co.,* 68 N. H. 578; *Pac. Mutual* v. *Branham,* 70 N. E. 174; *Grand Lodge* v. *Orrell,* 109 Ill. App. 422; *Vance on Ins.,* page 586.

The weekly indemnities are payable at once, and assured is not required to wait until disability has ceased.　1 *Cyc.,* page 281; *Ins. Co.* v. *Franklin,* 43 S. W. 709.

*Vernon Cook* (with whom were *Gans & Haman* on the brief), for the appellee.

The cases of *Bankers Life Ins. Co.* v. *Miller,* 100 Md. 1, and *Maryland Cas. Co.* v. *Gehrmann,* 96 Md. 644, undoubtedly establish the rule in Maryland to be that if the materiality of the warranty is clear, it becomes a question of law for the Court.　If, however, the materiality of the warranty is doubtful, it is a question of fact for the jury.

What is the warranty and what is the breach in the present case?　The warranty was that the applicant had not received any medical attention at any time for any complaint for seven years prior to the issuing of the policy.　On the witness stand, the defendant frankly admits that this statement contained in the warranty is untrue.　During the seven years preceding the issuing of the policy, he had frequently received medical attention.　Without repeating the facts here, it is sufficient to

say that the plaintiff admitted that he had frequently been treated, both by Dr. Fleming and Dr. Brown, for colds on the chest, grippe, and throat trouble.   He had had a cough, or a tickling in the throat for some years, and during one entire winter he had been under treatment for this by Dr. Fleming, whose office he visited regularly for the purpose of having his throat and nostrils sprayed.

In determining the question of the materiality of this warranty, we must constantly bear in mind that we are dealing, not with a life insurance policy, but with a health insurance policy, and the difference between the two in this respect, we think, is manifest.   There are many things which might not be material to the risk in a life insurance policy, yet, which are material to the risk in a health insurance policy.

In Pennsylvania, where a statute similar to ours is in force, it has been held that the question as to whether or not the applicant has received medical attention within a given number of years prior to the issuing of the policy is one which is, as a matter of law, material to the risk, even in the case of life insurance; *Mengel* v. *Insurance Co.,* 176 Pa. State, 280; *Lutz* v. *Insurance Co.,* 186 Pa. 530; *March* v. *Life Insurance Co.,* 186 Pa. 642; *Wyman* v. *Fidelity Mutual Insurance Co.,* 17 Pa. Co. Ct. 261; *U. B. Mutual Insur. Co.* v. *O'Hara,* 120 Pa. State, 256.   In the Mengel case, the assured stated that he had always been temperate, and when asked whether he had consulted a physician within the year previous to the issuing of the policy, he replied that he had consulted a physician once for influenza.   The proof showed that in addition to this he had also consulted a physician within a year previous to the issuance of the policy for vomiting and nausea caused by drunkenness, and the Court held on this state of facts that there was such a breach of a material warranty as to require the Court to pronounce on it as a matter of law, and that there could be no recovery.   See also *Fidelity Co.* v. *Miller,* 92 Fed. R. 63.

It was urged below that the ailments suffered by Dulany were of a trivial nature, and were such as are suffered by a

large percentage of the population of Baltimore. We do not think this position is tenable on the evidence. It is, of course, true that colds are common, and almost universal, but it is not universal or common that one should have throat trouble of such a serious character as to require constant visits to a physician throughout one entire winter, and to require the special treatment of spraying the throat and nostrils which Mr. Dulany received. It appears from the uncontradicted evidence that this policy was taken out on November 24th, 1904, and that on January 8th, 1905, less than two months thereafter, it was found that Mr. Dulany was suffering with tuberculosis, and that the disease had already gained some headway. It is true that the physician who testified for Mr. Dulany would not admit that the indications were that the tuberculosis had existed prior to the issuing of the policy, but he would not deny that such may have been the case, and we think that even without technical medical knowledge, it is reasonably probable that the throat trouble which Mr. Dulany experienced before taking out the policy, and which he has described in his testimony, was at least the forerunner of the consumption which was found well developed a few weeks after the issuing of the policy.

It is certainly fair to assume that if the company, before issuing the policy, had been notified of this serious throat trouble, extending through an entire winter, they would have required him to submit to a physical examination, or at least have made some further investigation in regard to the nature, and extent of that trouble. This, however, they were prevented from doing by Mr. Dulany's silence. The equity of the Insurance Company in such a case is much stronger than in the instance of life insurance. In the latter case, the applicant is regularly subjected to a physical examination, and compelled to answer a long series of questions in reference to his previous health and family history. In the present case, the company does not require a physical examination, unless there are special circumstances making it advisable. No physical examination was made in this case. Mr. Dulany

was not asked a long series of questions about his health, but as will appear from the schedule of warranties, was not asked more than two or three questions on this subject, and if an ordinary list of questions is narrowed down in this way from a dozen or more to two or three, it is certainly fair to assume that these two or three questions which are left, and which are the only information the Company has, on the faith of which it issues a policy, are clearly and essentially material to the risk.

In our opinion, this breach of warranty was fatal to the policy as a whole, and consequently fatal to the plaintiff's whole case. This was the theory set forth in the defendant's second prayer. JUDGE STOCKBRIDGE, who decided the case below, was not willing to go this far. By refusing the second prayer and granting the third, he evidently was of the opinion that the question was, as a matter of law, material to the risk in so far as the health or illness features of the policy were concerned, but was not so material to the risk as to the accident features. Of course, we must admit that had Mr. Dulany answered the question fully, it can hardly be said it would have indicated he was any more liable to accident than a perfectly healthy man would be. We do not think, however, that as the policy of insurance is one entire contract, it could be held good in part and void in part.

In this case, the final proofs were filed May 2nd, 1905, and the suit was brought July 5th, 1905. This was before the expiration of three months, and consequently in direct violation of the terms of the policy.

Clauses similar to the one now in question are common in insurance policies, and their validity has uniformly been sustained except, perhaps, in a few cases where the limitations were utterly unreasonable. 1st *Ency. of Law*, 325; *Met. Ins. Co.* v. *Dempsey*, 72 Md. 94-5; *Cooley's Briefs on Insurance*, vol. 4, 3955 p; *Gillon* v. *Northern Ins. Co.*, 127 Cal. 480; *Gauche* v. *London and Lancastershire Co.*, 10 Fed. Rep. 347; *Jackson* v. *Southern Mutual Life Insurance Co.*, 36 Ga. 431; *Bryant* v. *Commonwealth Insurance Co.*, 6 Pickering, 131.

The plaintiff seeks to meet this difficulty by referring to cáses, in which it has been held that a refusal by an Insurance Company to recognize or pay the claim amounts to a waiver of a provision of this kind in the policy. It is quite true that many cases to this effect may be cited, but it will be found on examination that they are all cases in which there has been a complete, absolute and final refusal to recognize the plaintiff's claim in any manner whatsoever. We submit that the evidence in this case does not show any such refusal. The plaintiff's first prayer was drawn on this theory.

The company never refused to recognize the hernia claim. On the contrary, they were willing to recognize it, and to pay the plaintiff at the rate of $25 a week during the time he was actually eonfined to the house, towit, from January 11th to February 2nd, and they were willing, also, to pay the surgeon's fee for the operation. There being no refusal to pay this claim, there can be no waiver of the policy provision that suit should not be brought for three months, and JUDGE STOCKBRIDGE was clearly right in holding as he did in granting the third prayer, that as to this claim, at least, the action was prematurely brought. We think he might have gone further, and held the same as to the consumption claim, because the evidence shows that the position of the company was that they did not wish to take up this claim at all until the other claim was settled and out of the way. We are not concerned with the question as to whether or not this position is a reasonable or unreasonable one, but certainly it would be stretching the doctrine of a waiver to its extreme limit to say that in taking that position the company waived its right to require that no legal proceedings be brought for three months.

We contend that Mr. Dulany cannot recover anything on account of the tuberculosis disease under the circumstances detailed in the evidence, because it did not confine him to the house. This results from the express language of the policy.

The language must either be construed literally or else it must practically be construed to mean nothing at all. If it is construed literally, the policy does not cover the case of Mr.

Dulany, who admits that during the time he was in the Adirondacks he was never confined to the house by his tuberculosis.  On the contrary, he lived a life in the open air.  While he claims that he did not leave the hotel frequently during the period between February 9th and May 1st, he did during this time, spend his time on the open porch of the hotel in the open air.  He did occasionally leave the porch to visit his doctor, or for other purposes, but it clearly appears from his evidence that when he did remain on the porch and about the hotel it was not on account of the consumption, but on account of the intensely cold weather, the condition of the streets, which were covered with five or six feet of snow, and the fact that he knew nobody in the village, and had no place to go, as he himself testifies.

After May 1st, it must be admitted by the plaintiff, that he was in no sense confined to the house.  The policy clause now under discussion has, in a number of cases, been before the Courts, and it has been given a literal construction. *Bishop* v. *U. S. Casualty Co.*, 91 N. Y. Supp. 176; *Dunning* v. *Mass. Accident Assn.*, 99 Me. 390; *Bradshaw* v. *Amer. Benevolent Assn.*, 87 S. W. Rep. 46; *Cooper* v. *Phoenix*, 104 N. W. Rep. 735; *Schirts* v. *Phoenix Assn.*, 97 N. W. Rep. 966; *Gamer* v. *St. Lawrence Insur. Co.*, 46 N. Y. Supp. 965; *Liston* v. *N. Y. Casualty Co.*, 58 N. Y. Supp. 1090.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Superior Court of Baltimore City in favor of the appellee, as defendant below, in a suit on one of its disability policies.  The policy of which a copy appears in the record, insures the appellant, to whom it was issued, against disability or death resulting from accident and also against disability resulting from disease.

By the terms of the policy the appellant was entitled to receive from the company $25 per week during a disability, resulting from accident, which totally prevented him from attending to any of the duties of his occupation; but to an amount not exceeding $5,000.  If the injuries causing the

disability were received by the assured while riding on an elevator or as a passenger in a public conveyance propelled by steam, compressed air, electricity or cable; or in consequence of the burning of a building while he was in it he was entitled to receive $50 per week during total disability but to an amount not exceeding $10,000. If the injuries so received by the assured resulted in only partial disability he was entitled to receive during such disability, for a period not exceeding twenty-six weeks "a sum to be determined by the company but not less than twenty-five per cent nor greater than seventy-five per cent of the weekly indemnity before specified depending upon the extent of the disability."

The policy further provided that "If the assured shall suffer from bodily disease or illness not hereinafter excepted and such disease or illness shall wholly disable and prevent the assured from performing any and every kind of duty pertaining to his business or occupation the company will pay to him twenty-five dollars ($25) a week for the period of such disability during which he shall be necessarily confined to the house; any disability of less than seven consecutive days or in excess of fifty-two weeks is not covered."

Other provisions of the policy, pertinent to the present case, required prompt written notice to be given to the company at New York City of any disability for which a claim was to be made with full particulars and the name and address of the assured, and affirmative proof of the duration of the disability to be furnished, within two months after its termination, to the company. It was also provided in the policy that "Legal proceedings for recovery hereunder may not be brought before the expiry of three months from date of filing final proofs at the company's home office, nor brought at all unless begun within six months from time of * * * the termination of disability." It was further provided that claims not brought in accordance with the foregoing provisions would be forfeited to the company.

The policy also provided that an agent had no authority to change it or waive any of its provisions, and that no notice to

any agent or knowledge of his or of any other person should be held to effect a waiver or change in the contract or any part of it, and specified that the only method in which a change in the policy or a waiver of any of its provisions could be made was by an endorsement thereon signed by the officers of the company.

Attached to the policy is a series of interrogatories and answers thereto made by the assured, designated a "Schedule of Warranties" on which appears the following statement designated "O."

"I have not been disabled nor have I received medical or surgical attention during the past seven years, except as follows: None."

The appellant testified that he took out the policy through the defendant's agent, Mr. Harrison, who approached him about it and he took his word for the policy. The record also contains evidence tending to show that on January 2nd, 1905, the appellant had a slight accident in his automobile which skidded on a wet pavement and struck the curb stone and jolted him, but he was not thrown out and "he did not feel any effects" from that accident. Two days thereafter as he was getting off a trolley car at the corner of Calvert and Pleasant streets in Baltimore the motorman started forward and he was thrown from the car and his body received a severe twist. He walked up the hill on Pleasant street toward his office, and as he was nearing the top of the hill he felt very severe pains on his left side such as he had never had before in his life. As soon as he reached his office on Charles street he examined himself and found a swelling at the base of his abdomen about the size of an English walnut which pained him very badly. He then went to see Dr. Thomas who said it was a rupture and sent him to Dr. Finney who examined him and advised an operation and he went to the Union Protestant Infirmary to be operated upon. He there underwent another examination by Dr. Finney assisted by the house surgeon at which it was discovered that he had acute pulmonary tuberculosis of recent development, but he was operated on

for the hernia and was thereby confined to the hospital for a little over three weeks.

He then promptly, before he had entirely recovered from the operation, went, under his physician's advice, to a sanitarium in the Adirondacks to be treated for the tuberculosis. He remained under treatment in the Adirondacks, and neighboring regions resorted to by consumptive patients for that purpose, until November 17th, when he returned to Baltimore and again took up his business. About the middle of April he paid one short visit to Baltimore but promptly returned on his physician's positive advice to the Adirondacks. During the first month of his treatment he remained in the house or on its porch where he was required to remain in order to be in the open air as much as possible. He took his exercise on the porch and he testified that he did not think that he went off of it more than three times in that month and then only to go to see his doctor. He also described his method of living during the remainder of his treatment in that region. There was other testimony tending to show that between April and November of the time spent by the appellant in the Adirondacks he was never sick enough to necessitate his staying in his house.

Before going to the hospital the appellant saw Mr. Steele, the Baltimore manager of the appellee company, and told him about this claim and that he could not tell when he ruptured himself, whether it was from the automobile or the street car accident. He also told Mr. Steele, after he had gotten out of the hospital, that he was going to the Adirondacks when Steele said "the policy was not good for that," and called his attention to the clause in it restricting the company's liability to the time during which he was closely confined to the house.

The appellant filled out upon one of the company's blanks thereafter sent to him for that purpose by Mr. Steele a detailed statement of his claim which with the attending physician's statement was sent to the company on May 1st with a request to be advised if it was not complete and was received by the company without protest or objection. In that claim the ap-

pellant stated that he had been suffering from illness which he described as "acute pulmonary tuberculosis and surgical operation for hernia performed by Dr. Finney," and also gave the other information called for by the company's blank on which it was made out, but nothing was said as to the cause which produced the hernia.

The appellant on cross-examination stated that for five or six years he had a clearing of his throat and during one winter had gone about once a week to Dr. Fleming to have his throat and nostrils sprayed to get rid of it. He had also suffered now and then from a cold in the head and had had the grippe over three or four years before the trial for which he had been treated by Dr. B. B. Brown. There was also testimony by Dr. Thomas, the appellant's family physician, that he had a chronic throat condition which is common to nine-tenths of the people in Baltimore where what is known as a throat climate prevails, and that medical treatment is not ordinarily resorted to for that trouble but that the appellant was rather prone to consulting physicians.

The declaration in the case contains three common counts in *assumpsit* and two special counts on the policy one for the injury received on the street car resulting in the hernia, and the other for the disability resulting from the tuberculosis. To this declaration the defendant company in the first instance filed the general issue pleas and subsequently by leave of Court filed a special plea setting up an alleged breach of warranty on the part of the plaintiff in falsely making the answer to the clause designated "O," in the application for the policy, inquiring whether he had received any medical or surgical attention during the seven years prior thereto. To this plea the plaintiff demurred and his demurrer was overruled and he joined issue thereon.

There are three bills of exceptions in the record, two to rulings on evidence, and the other to the granting of the defendant's third prayer by which the jury were instructed to render the verdict in its favor on which the judgment appealed from was entered.

The first exception was to the Court's refusal to allow the appellant when on the stand to reply to a question asking him to state what report he made to Mr. Harrison or to the company in answer to the clause which follows the letter "O", in the application for the policy, relating to the surgical or medical attendance during the past seven years, except as there follows. It does not appear from the record what answer the witness would have made to the question nor is there any statement or offer of what the plaintiff proposed to prove by the witness in that connection and we are therefore unable to say whether the plaintiff was injured by the Court's ruling. . Inasmuch however as the question was a proper one and the case must be remanded for a new trial for error in granting the defendants third prayer we will briefly express our views upon the admissibility of statements made to an agent of an insurance company under the circumstances referred to in the question.

The policy before us contains the usual provision that no agent has power to change it or waive any of its terms but this Court has several times decided that such a clause must be construed to relate to the provisions of the contract itself after it has gone into effect and not to apply to the conditions which relate to the inception of the contract when it appears that the agent has delivered the policy and received the premiums with full knowledge of the actual situation. *Hartford Fire Ins. Co.* v. *Keating*, 86 Md. 146; *Mallette* v. *British As. Co.*, 91 Md. 484. The same doctrine has been announced by the United States Supreme Court in *N. J. Mut. Life Ins. Co.* v. *Baker*, 94 U. S. 610 and *Ins. Co.* v. *Mahone*, 88 U. S. 593, and by many of the Courts of other states in the cases collected under note 5 on page 943 of 2nd. ed. of *A. & E. Encycl. of Law.* If the actual facts were explained by the assured to the agent of the company through whom the policy was delivered to him and the premium collected and that agent undertook to determine whether the facts were material to the risk and wrote or instructed the appellant to write the answer appearing on the application, the company

would be estopped to set up those facts to defeat an action to recover on the policy.

The second exception was taken to the Court's refusal to admit in evidence a letter written by the plaintiff's attorney, to the company's Baltimore Manager, Mr. Steele, prior to the institution of this suit in reply to a letter received from the manager to whom the claim had been referred by the company for adjustment. The plaintiff's attorney, on being asked by the Court for what purpose the letter was offered, replied only for the purpose of bringing in the whole chain of correspondence and to show that a personal interview was requested again after receiving that and I want to offer the letter following that from Mr. Steele asking counsel to have another conference in reference to this matter. As none of the conferences between the representatives of the parties to the controversy resulted in its adjustment or compromise we see no reversible error in rejecting this letter.

At the close of the case the defendant offered three prayers of which the first and second were rejected and the third was granted, and the appellant excepted to the Court's action in granting it. The third prayer is as follows: "The defendant prays the Court to instruct the jury, the plaintiff has offered no evidence legally sufficient to entitle him to recover in this case, because this suit, so far as it relates to the plaintiff's claim on account of the hernia, was prematurely brought, and, he cannot recover on account of the tuberculosis because there is no evidence in the case legally sufficient to show that said tuberculosis ever necessarily confined him to the house, and that by the uncontradicted evidence in this case it appears that the plaintiff within seven years prior to the issuance of the policy on which this suit is brought, several times received medical attention and was under treatment for throat trouble for nearly an entire winter as described by the plaintiff himself in his evidence that there was therefore a breach of the warranty recited in the policy, and this breach was as a matter of law material to the risk as to the clauses of the policy relating to illness and that therefore the verdict must be for the defendant."

This prayer, in our opinion, should not have been granted. In the first place the suit was not prematurely institued in so far as it referred to the hernia claim.    The company, through its resident manager Steele, had notified the appellant that the policy did not cover the disability resulting from consumption. It had also, in a letter appearing in the record, addressed to the appellant's counsel by Mr. Steele on June 7th, 1905, after the eompany had referred the claim to him for attention, asserted that its liability for injury occasioned by the hernia was limited to the time the appellant was confined to his house and the hospital *i. e.* from January 11th to February 2nd.    It refused to treat the cause of the hernia as an accident but insisted that it should be treated as a disease and made subject to the limitation attached by the terms of the policy to·disability arising from that cause.    Now we have already seen that the policy limits the company's liability for disability from disease to the time during which the assured "shall be necessarily confined to the house" while it imposes no such limitation upon its liability for disability arising from accident.  The appellant, according to his testimony, had always claimed that the hernia was produced by accident and the only medical testimony in the record on this subject is that of Dr. Thomas who said that it was not congenital and ascribed it to the accident in alighting from the trolley car.

Under these circumstances we think that the provision of the policy limiting the time within which suit could be brought thereon was waived by the company and that the appellant did not sue prematurely.    1 *Cyc.* 281-2; *Phillips* v. *U. S. Benevolent Socy.*; 120 Mich. 142; *Balto. Ins. Co.* v. *Loney*, 20 Md. 40.

In the second place we think the instruction contained in the prayer that there was no evidence in the case legally sufficient to show that the tuberculosis ever necessarily confined the appellant to the house was erroneous.   The policy undoubtedly in plain language limits the disability from disease provided for by it to such as necessarily confines the assured to the house.   Under the repeated decisions of this

Court the policy must, like other contracts, be construed according to the sense and meaning of the language in which the parties have seen fit to express themselves and they must abide by that language even though its selection turn out to have been unwise or unfortunate. A party seeking to secure insurance against a certain contingency must pay due regard to the contents of the policy offered him and select one which plainly provides for the risk which he seeks to cover. At the same time particular expressions found in a policy should not receive a rigid interpretation at the hands of a Court but should be construed in reference to their context and in such manner as to give due effect to all parts of. the instrument.

The expression "confined to the house" in the present case is used, in a policy which upon its face undertakes for a consideration to insure against disability caused by diseases, not therein excepted (and consumption does not appear by the record to be excepted), for the obvious purpose of describing the duration of the period for which the insured, when totally disabled by disease from discharging the duties of his occupation, shall be entitled to draw a weekly indemnity. That purpose we think would be fully gratified by construing confined to the house to mean confined to any part of the house either inside of the doors or upon the porches or verandas attached to it on the outside. It is a matter of common knowledge that the most approved modern method of treating all diseases of the respiratory organs involves the constant or almost constant exposure of the patient to outer air. Sometimes this result is attained by locating the patient inside of the house and keeping the windows open, at other times it is accomplished by moving the couch or chair occupied by him out upon the porch. It cannot be supposed that the company, which is fairly chargeable with this common knowledge, meant by the use of the expression under consideration to indirectly exclude from the benefits of its policy the victims of a well known and widely prevalent disease which was not mentioned in the list of excepted disease contained in the

policy.   The plaintiff's own evidence, if believed by the jury, would have justified them in finding that he had been confined to the house, according to the construction which we have said should be given to the policy, during part of his stay in the Adirondacks.

In the third place the granted prayer erroneously instructed the jury *as matter of law* that the failure to mention in the application for the policy, the fact that the applicant had at different times within the prescribed period received medical attention for throat trouble, constituted a breach of warranty material to the risk insured against relating to illness.    Whatever view may be held in other jurisdictions, this Court has definitely decided that the materiality of representations made in an application for a policy of insurance is ordinarily a question for the jury.   *Bankers Life Ins. Co.* v. *Miller*, 100 Md. 1 ; *Md. Casualty Co.* v. *Gehrman*, 96 Md. 634 ; *Mutual Ins. Co.* v. *Deale*, 18 Md. 184.   In Miller's case, where a woman who was suffering from cancer of the uterus upon whom two surgical operations therefor had been performed, obtained a policy of insurance on her life upon the representation that she was in good health and had never had cancer or uterine disease of any kind.    Within six months thereafter the cancer proved fatal to her.    We there held that as it was palpable and manifest from the uncontradicted testimony and from the nature of the representations themselves, which related to a disease having a tendency to shorten life that they were material to the risk, the Court should have so instructed the jury, but we also stated that the materiality of such representations was ordinarily a question for the jury.   The present case does not fall within the class to which Miller's case belonged, as here the only medical testimony appearing in the record as to the nature of the assured's throat trouble tends to prove that it was trivial and unimportant.

For the error in granting the defendant's third prayer the judgment appealed from must be reversed and case remanded for a new trial:

*Judgment reversed with costs and case remanded for a new trial.*