PHOENIX INDEMNITY COMPANY *v.* W. COVER
SMITH, USE OF ARTHUR C. HOLMES.
[No. 22, April Term, 1935.]

*Decided May 22, 1935.*

650

The cause was argued before URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Joseph T. England* and *Julius F. Sandrock*, for the appellant.

*Arthur C. Holmes* and *Paul M. Higinbothom*, with whom was *Daniel E. Klein* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

The judgment questioned by this appeal was entered on the verdict of a jury in favor of the plaintiff in his suit on an accident insurance policy. Liability was disclaimed by the insurance company on the ground of alleged false statements in the application upon which the policy was issued. The application and policy were both dated April 3rd, 1933. The following questions and answers quoted from the application involve the representations which are said to have been false: Q. Are you a member of firm or employee? (State name of firm and business engaged in.) A. Employee—Arundel Corporation Engineering Contractors. Q. What is your occupation? A. Cost accountant. Q. Do your average weekly earnings exceed the aggregate single weekly indemnity payable under this Policy and all other similar policies carried by you? A. Yes. Q. Have you ever made application for life, accident or sickness insurance upon which you have not been notified of the action thereon? A. No.

The plaintiff testified that he signed the application after answering the questions in it as read to him by the insurance company's agent, Mr. Gardner, who solicited the business, delivered the policy, and collected the premium. As reflecting upon the truthfulness and sufficiency

of the plaintiff's representations we quote from his testimony as follows:

Q. What with regard to your employment did you tell Mr. Gardner? A. I told him I was in the employ of the Arundel Corporation in field cost accounting, and that my work had to do with large projects where it was necessary to set up a field organization for cost accounting purposes, and that it was not very often that one large project ran right into another one, and, consequently, I would not be surprised if there would be an interval between one job and another when I would not be employed. I went over all that in detail. Mr. Gardner said I was much in the same position as a school teacher or someone else along that line who would not be constantly on a payroll, or a railroad employee who was on furlough; furthermore, he said it was not important anyway * * * Q. What did you tell Mr. Gardner with respect to the last time you were on the payroll of the Arundel Corporation? A. I told Mr. Gardner that I had left the Safe Harbor job of the Arundel Corporation in June of the preceding year; that I was expecting to be called by the Arundel Corporation on a project here in Baltimore involving tunnel construction; that I was constantly expecting such a call, which had not yet come, but any day might have meant the beginning of this work and a call back to another assignment for me. Q. What did you tell him your earnings were? In reply the plaintiff said they "ranged from $35.00 to $45.00 a week at different intervals."

On cross-examination the plaintiff testified that when he signed the application for the policy of the Phoenix Indemnity Company, upon which this suit is based, he had not applied for a policy from any other company, but that later on the same day he made application for a policy to the Massachusetts Protective Association because the agent for the former company had expressed a doubt as to whether it would be willing to issue the proposed policy in view of the fact, duly mentioned in

the application to it, that about six months previously the plaintiff had suffered a fracture of the pelvis. The agent was uncertain whether the plaintiff would be regarded by the company as having sufficiently recovered from that injury to be acceptable for accident insurance.

Upon the evidence in the record we approve of the refusal of the trial court to direct a verdict for the defendant upon the ground of the asserted misrepresentations. There can be no question as to the accuracy of the plaintiff's description of his occupation as that of a cost accountant. It appears to have been his special and only vocation, and he was not required to disregard it, for the purposes of his application, merely because he was temporarily out of work. The answer to the question in reference to other applications for accident insurance was also correct, there being in fact no other such application by the plaintiff then pending. The statements as to his being an employee of the Arundel Corporation, and as to his average weekly earnings being in excess of the single weekly indemnity applied for, were not strictly correct if the questions thus answered were intended to inquire as to the applicant's effective employment and current earnings at that particular time. But in view of the testimony, it would hardly be just to characterize as false the plaintiff's statement as to his average weekly earnings and his reference to the Arundel Corporation as his employer. There is no dispute as to his having served exclusively since 1930 as an employee of that corporation, and that he was awaiting its call for work on another project, and it is also undisputed that the amount of his average weekly earnings, when so employed, was truthfully stated. But any possible deficiencies in the written answers were supplied by the full and explicit information given by the plaintiff to the defendant's agent. The testimony to that effect is uncontradicted. In *Dulany v. Fidelity & Casualty Co.*, 106 Md. 17, 34, 66 A. 614, 616, this court said: "If the actual facts were explained by the assured to the agent of the company

through whom the policy was delivered to him and the premium collected, and that agent undertook to determine whether the facts were material to the risk and wrote or instructed the appellant to write the answer appearing on the application, the company would be estopped to set up those facts to defeat an action to recover on the policy." It was said in the opinion in *Great Eastern Casualty Co. v. Schwartz,* 143 Md. 452, 457, 122 A. 647, 649: "When facts, as to the materiality of which there may be a legitimate question, are stated by the applicant to the authorized agent of the insurance company, and are disregarded in the application because of his decision that they are not material, the company is estopped to rely upon such facts to defeat a recovery."

In the present case there could be a legitimate question as to the materiality of the supplemental facts reported to the agent by the plaintiff, and there is no sufficient basis for a conclusion that in preparing the application they conspired to mislead the insurance company, or that the plaintiff acquiesced in an effort by the agent thus to defraud his principal. The circumstances of this case, therefore, do not bring it within the rule applied in the cases cited by the appellee, in which the insurer was defrauded by false statements in the application as to manifestly material facts. *Commercial Casualty Ins. Co. v. Schmidt,* 166 Md. 562, 171 A. 725; *Stiegler v. Eureka Life Ins. Co.,* 146 Md. 629, 127 A. 397; *Forwood v. Prudential Ins. Co.,* 117 Md. 254, 83 A. 169; *Metropolitan Life Ins. Co. v. Jennings,* 130 Md. 622, 101 A. 608; *Globe Reserve Mut. Life Ins. Co. v. Duffy,* 76 Md. 293, 25 A. 227.

The defense to which we have referred was urged by demurrer to one of the plaintiff's replications, and by objection to the admission of the quoted testimony in regard to his conversation with the defendant's agent when the application was being prepared, as well as by ten prayers for the withdrawal of the case from the jury. There was no error in the rulings of the trial court upon the contentions thus presented.

By a special exception to the plaintiff's first prayer, relating to the measure of recovery, if the verdict should be in his favor, the defendant disputed the hypothesis of the prayer that the plaintiff was prevented, by his accidental injury, after the date of the policy, from performing any of the duties of his occupation. The point of this exception is that as the plaintiff was not actually employed at the time of the accident, he was not subject to such a loss of earning opportunity as the policy contemplated.

The insurance provided by the policy is, in part, "against loss resulting independently and exclusively of all other causes from accidental bodily injury sustained during the term of the policy hereinafter referred to as 'such injury,' as follows:

" 'Total disability (1). If such injury independently and exclusively of all other causes, shall, within thirty days from the date of accident, wholly and continuously disable the Insured, and prevent him from performing each and every duty pertaining to his occupation, the Company will pay weekly indemnity at the rate hereinafter specified for the period of such continuous total disability, but not exceeding fifty-two consecutive weeks. After the payment of weekly indemnity for fifty-two weeks as aforesaid the Company will continue the payment of weekly indemnity of the same amount thereafter so long as the Insured shall be wholly and continuously disabled by such injury from engaging in any occupation or employment for wage or profit.'

" 'Partial disability (2). Or if such injury, independently and exclusively of all other causes, shall, within thirty days, from date of accident, and immediately following total disability, continuously prevent the Insured from performing each and every duty of his occupation for one-half of his business time, the Company will pay one-half of the weekly indemnity for the period of such disability, as hereinafter provided. Indemnity for partial disability shall not be payable in excess of fifty-two weeks.' "

Double indemnity was provided if an injury within the purview of the policy should be sustained by the insured while a passenger on a public conveyance of a common carrier. The amount of single indemnity specified in the policy was a weekly payment of $25.00.

It was proved at the trial that the plaintiff was wholly unable to engage in any work from the time of his accidental injury on April 28th, 1933, until March 15th, 1934, when he became an employee of the Public Works Admiistration, and that thereafter, until the date of the trial, which occurred on November 26th, 1934, he had only half of his normal ability to pursue his vocation as a cost accountant. The more exacting and burdensome duties usually required of the plaintiff as cost accountant on construction projects, as compared with the work assigned him under the Public Works Administration, were described in his testimony. The verdict awarded him an amount representing double indemnity for the period of his total disability resulting from his accidental injury, sustained while he was a passenger on a public conveyance of a common carrier, and one-half of such indemnity for the remaining period prior to the trial, and certain medical expenses within the policy provisions.

It was the expressed purpose of the policy to indemnify the injured against loss resulting from accidental injury by which, primarily, he would be disabled and prevented from performing wholly or partially the duties of his occupation. If by such an injury the insured is rendered incapable of accepting opportunities to pursue his vocation, the practical consequences to him might be as real and serious as if an existing employment had been interrupted by the accident. The terms of the policy are sufficiently comprehensive to provide insurance against such a loss. In our opinion, therefore, the court below was right in refusing to adopt the restricted construction upon which the special exception to the plaintiff's first prayer was based.

Five of the defendant's twenty-three prayers were

granted. Ten demurrer prayers were refused as above noted. The remaining prayers of the defendant were also properly rejected because some of them were based on theories sufficiently indicated in its granted prayers and some were unsupported by any proof.

No error has been found in any of the rulings on the admissibility of evidence to which the defendant excepted. To some of those exceptions we have already specifically referred. A number of the others related to evidence as to the nature of the plaintiff's injury and of his occupational duties for which he was thereby incapacitated. It seems to us unnecessary to discuss the evidence exceptions in detail. In our judgment they refer to no testimony which was improperly admitted or excluded.

*Judgment affirmed, with costs.*