CLIFTON D. MAYHEW, INC. *v.* GEORGE A. FULLER COMPANY, ET AL.

[No. 578, September Term, 1966.]

*Decided November 8, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and FINAN, JJ.

*Joseph F. Vallario, Jr.* and *Sebert H. Keiffer* for the appellant.

*Kevin J. McCarthy,* with whom were *Sasscer, Clagett, Powers & Channing, Jerrold V. Powers* and *Martin J. Freeman* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

The Bencon Construction Company, Inc., as general contractor, entered into a contract with the Washington Suburban

Sanitary Commission, as owner, for the construction of a new building and alteration of an existing building on the Commission's site in Hyattsville, Maryland. Thereafter, Bencon and Clifton D. Mayhew, Inc. (Mayhew), appellant, entered into a subcontract covering all of the painting work required to be done under the general contract. Subsequently, George A. Fuller Company (Fuller), an appellee, succeeded Bencon as general contractor and Mayhew agreed to continue with the painting subcontract.

Aetna Casualty and Surety Company (Aetna), the other appellee, is the surety for the general contractor, Fuller.

As the project neared completion, a question arose as to whether certain painting work was required by the drawings and specifications; the appellant contended that the work in question was not included within the scope of the subcontract and so notified Fuller, the contractor. A pertinent part of the subcontract bearing on the dispute before the Court is Art. 1, § (d):

> "The Subcontractor further agrees to be bound to the Contractor by the Architect's interpretation of his Drawings, Specifications, and Addenda thereto."

On November 2, 1964, a conference was held between Mayhew, Fuller and the architect, the latter being the owner's representative. Since all parties agreed that time was of the essence, Fuller sent a letter to Mayhew, dated November 3, 1964, directing it to do the disputed work:

> "Confirming our meeting at the subject project on November 2, 1964, you are hereby directed to paint the window frames, radiator covers and door frames. *It is our feeling that the drawings and specifications do not clearly indicate that these items are to be painted.*
>
> "In the interest of completing all phases of construction before December 5, 1964, we request that this work be completed as our field superintendent directs.
>
> "We shall forward the extra costs incurred to the owner in the form of a change estimate.
>
> "If this change estimate is rejected, we shall re-

quest arbitration to determine the actual responsibility in this matter." (Emphasis supplied.)

A copy of the above letter was sent to the architect, who on November 4, 1964, replied to Fuller:

"We are in receipt of a copy of your letter to Clifton D. Mayhew, Inc. dated November 3, 1964.

"We do not understand your purpose in sending us a copy of this letter. You are advised that this office has not authorized any painting work over and above that called for by the contract. Therefore, any additional charges from Clifton D. Mayhew, Inc., are the responsibility of George A. Fuller Company."

The architect did not send a copy of this letter to Mayhew nor did Mayhew know of it until some four months after the disputed work was completed.

Mayhew, prior to commencing the disputed work sent Fuller a written quotation on the work, estimating the cost to be $3,302.70. Mayhew heard nothing further from Fuller or the architect and proceeded to complete the work, eventually forwarding a bill to Fuller in the amount of $3,302.70. There was no dispute between the parties that the work was done and that the amount billed was reasonable.

Thereafter, on December 3, 1964, Fuller submitted the change estimate to the architect and the architect rendered his ruling by a letter of December 21, 1964, stating:

"We are in receipt of your letter of December 3, 1964 designated Changes—Item No. 73.

"The work described in this proposal was already required under the basic contract and therefore no addition to the contract price is in order."

On February 17, 1966, Mayhew filed an action against Fuller and Aetna in *assumpsit* on the common counts in the amount of $4,984.50 for work done and materials furnished.

This case came before the court on July 27, 1966, at which time counsel for Fuller agreed that $1,260.60 of the $4,984.50 was properly owed for extras, separate and apart from the $3,-

302.70 represented by the estimate of November 5, 1964, and for which amount Fuller denied liability.

At this hearing both parties made opening statements after which the court informed counsel for defendants, "I think you are entitled to summary judgment based on what you say." A considerable exchange of views on such action ensued between counsel for both parties and the court, after which the parties agreed to each submit to the court a memorandum on the facts, and the parties agreed in the presence of the court that if evidence were taken, it would conform substantially to the facts as outlined by each counsel in his opening statement plus the contract between the parties and the letters counsel had each read to the court concerning the interpretation of the contract. The court then directed the parties to stipulate as to the facts and to submit a memorandum of the facts and the law within fifteen days. No formal stipulation was ever filed, however, each party did file a memorandum of his version of the facts and the law. It was on the basis of the "Memorandum of Points and Authorities in Opposition to Summary Judgment" submitted by the appellant (plaintiff) and "Memorandum for Defendants" submitted by the appellees (defendants) that the court reached its decision, entering judgment against Fuller for the undisputed $1,260.60, thus ruling adversely to Mayhew in its claim for the additional $3,302.70.

The court, in denying the $3,302.70 claim against Fuller, relied entirely on the provision in the subcontract, Art. 1, § (c), whereby Mayhew agreed to be bound by the architect's interpretation of his drawings and specifications stating:

> "It is, therefore, the opinion of this Court that the architect's decision in this case is not reversible by the Court since the parties voluntarily agreed to be bound by his decision and no fraud or bad faith on the part of the architect was alleged; * * *."

and citing *Clarke Baridon Inc. v. Merritt-Chapman & Scott Corp.,* 311 F. 2d 389 (4th Cir. 1962) and *M. & C. C. v. Allied Contractors,* 236 Md. 534, 204 A. 2d 546 (1964), as controlling, both being cases wherein the contracting parties agreed that with regard to any matters in dispute, they would be bound by

the interpretation of a third party. Compare *First National Realty Corp. v. Warren-Ehret Company, Inc., 247* Md. 652, 233 A. 2d 811 (1967).

If that be all there were to this case, based on the lower court's premise that it had considered all of the material facts presented by the pleadings and memoranda of the parties, none of which it believed to be in dispute, the court's application of the law might have been apposite. However, this Court is of the opinion that the pleadings and memoranda presented evidentiary matters and material facts which were in dispute and which could not be properly disposed of by summary judgment procedure. *Foley v. County Commissioners,* 247 Md. 162, 175, 230 A. 2d 298, 305 (1967); *McGinnis v. Chance,* 247 Md. 393, 399, 231 A. 2d 63, 67 (1967); *Meola v. Bethlehem Steel,* 246 Md. 226, 239, 228 A. 2d 254, 262 (1967).

In the memoranda filed with the court and at its direction, counsel for both parties quoted either the entire letters or excerpts of the letters from Fuller to Mayhew dated November 3, 1964, and from the architect to Fuller dated December 21, 1964, and appellant's memorandum contained a copy of the letter from the architect to Fuller dated November 4, 1964.

If the letters do nothing more, they set forth facts which, if unexplained, could support the conclusion that there had been a waiver and modification by Fuller of Art. 1, § (d) of the subcontract which required Mayhew to be bound by the architect's interpretation.

In *Foard v. Snider,* 205 Md. 435, 109 A. 2d 101 (1954), a case involving a dispute as to whether the appellants had executed a deed of conveyance to land with an option to repurchase or had executed a mortgage in favor of the appellees, this Court held that the agreement of both parties to submit the matter to court for a declaratory decree was a waiver of the appellees' right to contest the exercise of the option agreement.

In the instant case Fuller's letter of November 3, 1964, containing the arbitration proposal, was written the day following the discussion held concerning the disputed work, which discussion was attended by Mayhew, Fuller and the architect's representative. A proposal made the following day to submit the matter to arbitration may well have meant arbitration by

6

somebody other than those present at the previous day's meeting. Furthermore, it is not clear whether Fuller meant that the purpose of the arbitration was to determine liability for the extra work as between it and the owner, it and Mayhew or Mayhew and the owner. In any event, the situation presented facts beyond resolution by summary judgment.

The pleadings present additional matters which on their face reveal inconsistent contract provisions. In response to the appellees' demand for particulars, Mayhew filed a copy of the subcontract. Although the lower court relied heavily on Art. 1, § (d) (which provides that the parties agree to be bound by the architect's interpretation of his drawings and specifications), the following sections of Art. 1 are germane to this decision:

"(c) It is agreed that the Subcontractor assumes, for the portion of Work covered by this Agreement, all obligations and responsibilities placed upon the Contractor by the aforesaid *'Contract Documents'*, which he, the Contractor, has assumed toward the Owner." (Emphasis supplied.)
"(a) The Subcontractor agrees to furnish all labor and materials * * * for Washington Suburban Sanitary Commission, hereinafter called the OWNER, in accordance with the General Conditions of the Contract between the Owner and the Contractor and in accordance with the Drawings and Specifications, including all Addenda thereto, prepared by * * * the Architect, * * * *the whole being hereinafter referred to as the 'Contract Documents', and all are hereby made a part of this contract."* (Emphasis supplied.)

Section (a) is of particular importance because it incorporates by reference in the subcontract the contract between the owner and the contractor, Fuller, and one of the provisions in the prime contract, as set forth in the memorandum submitted by the appellant's counsel to the lower court, provides under § F, ¶ 20 (c) of the "Special Provisions":

"Architect will not rule on matters in dispute between the several subcontractors as to scope of subcontracts,

nor rule on disputes between Contractor and any sub-contractor as to scope of subcontracts."

Comparing this section with Art. 1, § (d) of the subcontract an apparent conflict in terms arises which presents a mixed question of law and fact. From the stated facts it is not clear which section controls, and without the clarification which may have been provided by the introduction of the prime contract into evidence, it may well be argued that the apparent inconsistency between § F, ¶ 20 (c) of the "Special Provisions" of the prime contract and Art. 1, § (c) of the subcontract could have been reconciled. However, this is merely conjecture and is not something upon which a summary judgment can be predicated.

In the court below the parties agreed that the sum of $1,-260.60 was not in dispute and the court entered judgment in that amount. This Court affirms the judgment of the lower court in the amount of $1,260.60 and does so without prejudice to the appellant on remand, to prove such additional claim, if any, that it may have.

*Judgment affirmed and case remanded, without prejudice to appellant, appellees to pay the costs.*