JOSEY, ET AL. *v.* ALLSTATE INSURANCE COMPANY

[No. 58, September Term, 1968.]

*Decided February 5, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Henry F. Leonnig* for the appellant Odis Virgil Josey, *Fred C. Sacks* on the brief for Wilbur Andrew Ritchie, Adm'r of the estates of William C. Johnson and Thelma E. Johnson as guardian of the sons of the Johnsons.

*Charles E. Channing, Jr.,* with whom were *Sasscer, Clagett, Powers & Channing* on the brief, for appellee.

Amicus Curiae brief filed by Unsatisfied Claim and Judgment Board of the State of Maryland. *Francis B. Burch, Attorney General,* and *William E. Brannan, Assistant Attorney General,* on the brief.

SINGLEY, J., delivered the opinion of the Court.

This controversy commenced in the Circuit Court for Prince George's County, when Allstate Insurance Company (Allstate) filed a petition for declaratory judgment against Josey and those claiming damages resulting from an automobile accident in which Josey was involved. The defendants below, who are the appellants here, answered and prayed a jury trial as provided by Maryland Code (1957, 1967 Repl. Vol.) Art. 31 A, § 9. Thereafter, the depositions of Mr. and Mrs. Josey were taken by Allstate. Motions for summary judgments, supported by affidavits, were filed by both Josey and Allstate. The lower court granted Allstate's motion, denied Josey's, and entered judgment for Allstate. It is from this judgment that Josey has appealed. The Unsatisfied Claim and Judgment Fund Board of the State of Maryland (see Maryland Code (1957, 1967 Repl. Vol.) Art. 66½, §§ 150 ff) has filed a brief as *amicus curiae.*

In order to pass on the propriety of the granting of the summary judgment, it is necessary to review the facts developed in the depositions and set out in the affidavits. At the time the suit was brought, Josey was a resident of Montgomery County, 36 years of age and a general shop mechanic employed by Potomac Electric Power Company. On 3 February 1964 State Farm Insurance Company (State Farm), which had written Josey's automobile insurance for about five years, sent him a letter:

> "We regret to tell you that we do not wish to continue your policy beyond 12:01 A.M. Standard Time March 28, 1964; the expiration of the present policy period. On that date our obligation to protect you under this policy will terminate.
> "You are given this advance notice so that you may have reasonable time to make other arrangements for your insurance protection."

Rudolph Toms, divisional underwriting superintendent for State Farm, stated in his affidavit that

> "* * * [T]he record of Mr. Odis Josey was evaluated; that because of the development of accident and/or traffic violations by said insured driver, it was the decision of the Underwriting Department that said insured's insurance should not be renewed * * *."

Josey, in his deposition, stoutly maintained that in the five years preceding March, 1964, he had been involved in accidents in 1960 and 1963 and had been fined once for a traffic violation. He testified that,

> "* * * I didn't want to renew with them [State Farm] anyway. We talked about it before I even got a notice from State Farm. Everytime I sent in my premium they always accepted the premium and added a couple bucks on afterward, couple weeks later. Always find some reason: they moved into a different territory, and all that stuff."

Shortly after the receipt of the State Farm letter, probably on

11 March 1964, Josey went to see Karl Riesterer, an agent for Allstate, at Prince George's Plaza. Josey said that he went at the suggestion of a fellow employee, who had known Riesterer when Riesterer worked for Potomac Electric Power Company.

In his deposition, Josey described his conversation with Riesterer:

> "Q. Now, before you signed these declarations did you answer this question for Mr. Riesterer: 'With respect to the applicant'—meaning you as the applicant for insurance—'or any member of his household, has any insurer cancelled or refused or given notice that they intend to cancel or refuse any similar insurance?'
>
> "Did he ask you that question?
>
> "A. Yes.
>
> "Q. Did you answer, 'No'?
>
> "A. I answered that I had a letter from State Farm stating they did not wish to renew my policy upon its expiration.
>
> "Q. In other words, you told him that State Farm had told you it didn't want to renew?
>
> "A. They didn't wish to renew, that's right.
>
> "Q. When he asked you the question and you told him that, did you all have any discussion about what you would put down for an answer to this application?
>
> "A. No. I didn't check the answers; he did.
>
> "Q. In other words, Mr. Riesterer was the one who put these check marks on the application above your signature?
>
> "A. That's right. That's right.
>
> "Q. Did you read what he put down before you signed it?
>
> "A. No, I didn't."

Josey also said that he told Riesterer about an accident which had occurred in 1963, but was uncertain whether he said anything about the 1960 accident. He said that Riesterer had not asked him about his traffic record.

The application form which Josey signed contained the following language, which appeared immediately above his signature:

"I declare that the statements made by me in this application, and any supplemental questionnaire hereto, are true.

"Fully understanding that the Company may investigate the truthfulness of said statements through motor vehicle or police department records and the use of inspection services, I hereby request the Company to issue the insurance applied for, including any renewals thereof, in reliance thereon."

Josey left Riesterer's office with a 30-day binder providing temporary coverage which commenced at 12:01 A.M. on 28 March 1964, the time when his State Farm coverage expired.

Some seven to ten days later, Allstate sent Josey a policy which he said he never read. The policy contained the usual provision reserving to the insurer a right to cancel if the representations of the insured were untrue. James J. Kelly, Allstate's underwriting superintendent, stated in his affidavit that Allstate would have refused to insure Josey had it known of the action of State Farm.

On 25 October 1964, Josey had a serious accident. Beginning with a letter of 14 December 1964, Allstate commenced to marshal its defenses. In a letter written to Josey that day, Allstate indicated that it was about to rely on a breach of the representation contained in the application for the policy, where a negative answer had been given to the question: "Has any insurer cancelled or refused or given notice that it intends to cancel or refuse any similar insurance?" By letter of 21 January 1965, Allstate disclaimed liability under the policy; on 25 January, Allstate voided the policy and tendered a refund of the premium, which Josey refused; and on 23 December it filed the petition for declaratory judgment, seeking a declaration that the insurance policy be rescinded because of a material misrepresentation made in the application.

These were the facts which were before the lower court when it determined to grant Allstate's motion for a summary judgment. Maryland Rules 610 a 1 and 610 d permit the granting

of such a motion and the entry of judgment when "there is no genuine dispute as to any material fact" and a party "is entitled to judgment as a matter of law." *Mettee v. Boone,* 251 Md. 332, 247 A. 2d 390 (1968); *Whitcomb v. Horman,* 244 Md. 431, 224 A. 2d 120 (1966).

As we see it, the court was confronted with two questions: one of law, one of fact. The first, the meaning of the question "Has any insurer cancelled or refused or given notice that it intends to cancel or refuse any similar insurance?" is a question of law. Josey urges that this question should be strictly construed. A cancellation, or notice of intention to cancel, he says, means the unilateral termination of coverage by an insurer before a policy has, by its terms, expired. A refusal, he says, relates to the inception of the insurance relationship, *i.e.,* to the point at which insurance is applied for, and the application is rejected. We are not prepared to give so restrictive a reading to the Allstate application. *Loving v. Allstate Insurance Co.,* 17 Ill.App.2d 230, 149 N.E.2d 641 (1958); *Strong v. State Farm Mutual Ins. Co.,* 76 S. D. 367, 78 N.W.2d 828 (1956). In so doing, we do no violence to the general principle that ambiguities in an insurance contract are to be resolved in favor of the insured. *Schloss v. Metropolitan Life Ins. Co.,* 177 Md. 191, 9 A. 2d 244 (1939). The plain language of the question "Has any insurer * * * given notice that it intends * * * to refuse any similar insurance?" would seem, under the facts of this case, to have called for an affirmative answer when Josey completed the Allstate form. *Nationwide Mut. Ins. Co. v. McBriety,* 246 Md. 738, 230 A. 2d 81 (1967); *Erie Ins. Exch. v. Lane,* 246 Md. 55, 59, 227 A. 2d 231 (1967); *Monumental Life Ins. Co. v. Taylor,* 212 Md. 202, 129 A. 2d 103 (1957).

There was a second question, however, which was one of fact, and which was properly a question for jury determination. *Clifton D. Mayhew, Inc. v. George A. Fuller Co.,* 248 Md. 1, 234 A. 2d 599 (1967). It involved what Allstate characterizes in its brief as "a sharp question": Did Josey tell Riesterer of the State Farm letter? Josey says he did; Riesterer said that Josey did not. On appeal, it is our province not to decide the issue, but to determine whether it exists, and in doing so, to resolve inferences against the movant. *Morris J. Liebergott & Assoc. v.*

*Investment Bldg. Corp.*, 249 Md. 584, 241 A. 2d 138 (1968); *Howard Cleaners of Baltimore, Inc. v. Perman,* 227 Md. 291, 176 A. 2d 235 (1961); *Lawless v. Merrick,* 227 Md. 65, 175 A. 2d 27 (1961).

If, in fact, Josey disclosed the receipt of the letter, Allstate may be estopped, as a matter of law, from denying liability. *Prudential Ins. Co. v. Schumaker,* 178 Md. 189, 12 A. 2d 618 (1940); *Phoenix Indemnity Co. v. Smith,* 168 Md. 649, 179 A. 50 (1935); *Great Eastern Casualty Co. v. Schwartz,* 143 Md. 452, 122 A. 647 (1923); *Dulany v. Fidelity & Casualty Co.,* 106 Md. 17, 66 A. 614 (1907); *Globe Reserve Mut. Life Ins. Co. v. Duffy,* 76 Md. 293, 25 A. 227 (1892).

For the reasons stated, we shall reverse the judgment entered below, and remand the case for trial.

> *Judgment reversed, case remanded for further proceedings; costs here and below to abide the result.*