CALLIGARO, Respondent, vs. MIDLAND CASUALTY COMPANY, Appellant.

*March 10—April 11, 1933.*

320

For the appellant there was a brief by *Anderson, Donovan & Steinle* of Milwaukee, attorneys, and *Waples & Waples* of Ironwood, Michigan, of counsel, and oral argument by *George H. Daum* of Milwaukee.

For the respondent the cause was submitted on the brief of *Reid & Reid* of Hurley, attorneys, and *Lamoreux & Cate* of Ashland of counsel.

NELSON, J. The defendant's principal contentions are (1) that there is no evidence to support the jury's finding that Calligaro did not misrepresent his occupation at the time he made application for insurance, and (2) that if Calligaro's occupation at the time he made application for the insurance was in fact a bartender in a speakeasy, the policy should be avoided because the representation was material and increased the risk.

As to the defendant's first contention, it appears without dispute that for about a year and a half prior to May 26, 1928, Calligaro had been continuously employed in his father's place of business. On May 26, 1928, he was so employed. It appears without dispute that on May 25, 1928, the day before he signed the application, Calligaro sold intoxicating liquor (three bottles of home brew) to federal prohibition agents. It further appears that on July 1st Calligaro was arrested in his father's place of business, at which time search of the place was made which resulted in the finding of a small quantity of "moon," four quarts of wine, and twenty-four pints of home-brew beer. To the charge of selling intoxicating liquor on May 25, 1928, Calligaro entered a plea of guilty and was sentenced to thirty days in the Ashland county jail. During the course of the trial, while the plaintiff was being examined as to Calligaro's occupation during the year and a half prior to his making application for insurance, the following colloquy took place between Mr. Reid, attorney for the plaintiff, and Mr. Anderson, one of the attorneys for the defendant:

"*Q.* During that year or a year and a half that he worked for your husband, was his work in the soft-drink parlor the same? *A.* In the same building.

"*Q.* And the same kind of work? Mr. Reid: As what?

"*Q*. During all of the time? *A*. Well, I do not know what you mean. Mr. Reid: We agree he was a bartender in a soft-drink parlor before this.

"*Q*. Will you agree he was a bartender in this place of business his father ran? Mr. Reid: Yes, sir; for a year and a half before this policy was issued.

"*Q*. And selling intoxicating liquor? Mr. Reid: At least on the 25th of May.

"*Q*. Do you admit in that year and a half that intoxicating liquors were sold in that place? Mr. Reid: I do not want to admit anybody to jail.

"*Q*. No. Mr. Reid: I admit it is a soft-drink parlor, commonly known and accepted as that.

"*Q*. As a speakeasy? Mr. Reid: I did not know there was any difference in them.

"*Q*. That is your understanding, a soft-drink parlor and a speakeasy is identical? Mr. Reid: That is my personal understanding.

"*Q*. What I mean to say is that during that year and a half your husband conducted the same kind of business there all the time. Mr. Reid: We have already agreed on that. I stipulated on that year and a half."

Later on in the trial, while a witness for defendant was being examined as to whether the company would have issued the policy had it known that Calligaro was in fact a bartender, serving and selling intoxicating liquor, objection was made by plaintiff's attorney to the form of the question because it assumed that Calligaro was violating the national prohibition laws at the time the application was made, whereupon the following colloquy between the court and the attorneys took place:

"By the Court: Is your assumption based on evidence already in? *Q*. (Mr. Anderson) Already in this record. It is stipulated that this man was a bartender in a speakeasy.

"Mr. Reid: In the year and a half before the application was made."

It further appears without dispute that the proofs of death submitted, consisting of the affidavits of the plaintiff

beneficiary, attending physician, employer (Calligaro's father), and undertaker, all specifically stated that the occupation of the deceased at the time of the accident was that of a clerk in a confectionery store. All of the testimony referred to, together with the stipulations, seem clearly to establish that Calligaro was, at the time he made application for insurance, a bartender in a speakeasy and not a clerk in a confectionery and soft-drink parlor, as represented by him. There is no testimony to the contrary unless it may be said that the plaintiff, who lived across the road from the place of business, so testified. She testified that her husband did not sell whisky and moonshine, after having first refused to answer and after having been admonished by the court to do so. Later on she testified that she did not know anything about it and that she was never in there when he sold any of it. A careful reading of all of the testimony found in the record clearly shows that Calligaro misrepresented his occupation when he stated that he was a clerk in a confectionery and soft-drink parlor. The answer of the jury is without support in the evidence.

Defendant's second contention is that the false representation was material to the risk. In *Murphey v. American Mut. Acc. Asso.* 90 Wis. 206, 62 N. W. 1057, it was said:

"The plaintiff's occupation was very material to the risk, and such false representation in regard to it operated, under the provisions of the contract mentioned in the foregoing statement, as a forfeiture of any such claims for indemnity."

That a person's occupation is material to an accident insurance risk is clear. Classifications and premiums are based upon the hazards which inhere in different occupations. In this state, however, we must give effect to sec. 209.06 (1), Stats., which is as follows:

"(1) No oral or written statement, representation, or warranty made by the insured or in his behalf in the negotiation of a contract of insurance shall be deemed material

or defeat or avoid the policy, or prevent its attaching unless such statement, representation, or warranty was false and made with actual intent to deceive or unless the matter misrepresented or made a warranty, increased the risk or contributed to the loss."

Under this statute it is clear that no written statement or representation made by the insured in negotiating a contract of insurance shall be deemed material or defeat or avoid the policy unless (1) such statement or representation was false and made with actual intent to deceive, or unless (2) the matter represented (a) increased the risk or (b) contributed to the loss. As before stated, there can be no doubt that Calligaro misrepresented his occupation at the time he made application for insurance, but whether he made the false statements with actual intent to deceive is not so clear on account of the possibility that he may not have differentiated in his mind between a soft-drink parlor in fact and a speakeasy. To him a soft-drink parlor in or near to Hurley may have meant an ordinary speakeasy. However, there can be no doubt that the matter misrepresented increased the risk. It appears without dispute that the company, in the usual course of its business, would not have accepted the risk had it known that Calligaro, at the time he applied for insurance, was in fact a bartender in a speakeasy. The fact that the company would have rejected the application if it had known that Calligaro was a bartender in a speakeasy shows that the matter misrepresented (his occupation) increased the risk. In view of the numerous cases found in the books which show the unfavorable attitude of insurance companies and societies toward persons directly engaged in the business or occupation of dispensing intoxicating liquors and drinks, we conclude that the matter misrepresented herein had a very direct bearing upon the risk covered by the policy and unquestionably increased the risk. See cases digested in 4 Couch, Cyclopedia of Insurance Law, §§ 892a, 892b. We

think it is obvious that the risk involved in insuring a bartender in a speakeasy is greater than that involved in insuring a clerk in a confectionery and soft-drink parlor. Since, in the view we take, the policy was void at its inception due to material misrepresentations, the premiums paid to the company by Calligaro in his lifetime should be accounted for, or credited on defendant's judgment for costs.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint.