## ZOLINTAKIS v. EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES.
### No. 1586.

Circuit Court of Appeals, Tenth Circuit.
June 18, 1938.

584

Calvin W. Rawlings and Parnell Black, both of Salt Lake City, Utah (Rawlings, Wallace & Black and Woodrow White, all of Salt Lake City, Utah, on the brief), for appellant.

E. D. Hurd, of Salt Lake City, Utah (Hurd & Hurd, of Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

Peter Zolintakis brought this action, as beneficiary, on a $7,500.00 policy of insurance issued by The Equitable Life Assurance Society, hereinafter called the Society, upon the life of one James Orfanos. The policy provided for double indemnity in case of accidental death.

The petition alleged that on or about July 14, 1935, Orfanos died while the policy of insurance was in full force and effect, and that his death resulted solely from bodily injury caused directly, exclusively, and independently of other causes by external, violent and purely accidental means.

The Society in its answer denied liability on the grounds: (1) That the insured was not dead; (2) that the insured, Zolintakis, and other unknown persons conspired and plotted together to procure the policy by fraud; and (3) that the insured made false representations in the application for the policy of insurance and the negotiations incident thereto. During the progress of the trial the Society filed an amendment to its answer wherein it admitted the insured's death, but denied it was accidental.

At the conclusion of all the evidence the Society made a motion for a directed verdict. Zolintakis also made a motion for a directed verdict but reserved the right to have any issue of fact submitted to the jury in the event the court denied his motion. The trial court granted the motion of the Society and judgment was entered thereon. Zolintakis has appealed.

The material facts are these:

The application for the policy sued on was dated January 17, 1934. Part I thereof was signed by insured and read in part as follows:

"My insurance age at nearest birthday is therefore 41 years. * * * My principal occupation is that of Clerk in Grocery Store at Lingos Grocery No. 126 W 2 So St. My other occupations are None. My residence is No. 126 West 2nd So St. Salt Lake City, Utah. Place of business is No. 126 W 2nd So St. Salt Lake Utah. * * * All of the foregoing answers and all those contained in Part II hereof are true, and are offered to the Society as an inducement to issue the policy or policies for which application is hereby made."

Part II of the application, the medical examination, was also signed by insured and read in part as follows:

"1. A. Date of birth? Sept. 13, 1892. * * * 3. A. How long have you lived at your present address? (City or Town.) A. one year. * * * 4. A. What is your occupation? (Position and kind of business.) A. Grocery Business. B. How long have you been so engaged? B. one year. * * * I agree that the foregoing answers shall be part of my application, which shall consist of Parts I and II taken together, and that the foregoing answers shall also become part of any policy contract that may be issued on the strength thereof."

Pursuant to the requirements of Section 43-3-24, subdivision (4), R.S.Utah, 1933, the policy contained the following provision:

"The Contract. This policy, and the application therefor, a copy of which is endorsed hereon or securely attached hereto, constitute the entire contract between the parties. All statements made by the Insured shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall avoid this policy or be used in defense of a claim hereunder unless contained in the written application therefor and a copy of such application is endorsed hereon or attached hereto, when issued."

It also contained the following provision:

"Age. If the age of the Insured has been misstated, any benefits accruing under this policy shall be adjusted to correspond to those which would accrue under a similar policy which the premium paid would have purchased at the Society's rates in use at the Register date hereof for the Insured's correct age."

The application for the insurance was taken by George Cayias, a soliciting agent of the Society and a son-in-law of Zolintakis. Shortly after Thanksgiving Day, 1933, Cayias was in the grocery store of Louis Lingos at 126 West Second South Street, Salt Lake City, Utah, soliciting Lingos for insurance. Insured approached Cayias at that time concerning the purchase of insurance. Negotiations followed and on January 17, 1934, the written application was completed. On the evening of that day insured was examined by the medical examiner for the Society and gave Cayias a promissory note for the first semiannual premium. Insured was working at the Lingos Grocery Store when the application was made. Upon receipt of the application the Society caused an independent investigation to be made concerning insured's income, business, and habits. The investigator for the Society interviewed Lingos. Lingos informed him that insured had been working in his grocery store for three, four, or five months, and was getting along fine; that he was worth from $2,000.00 to $3,000.00; had a monthly income of $75.00 to $100.00 for personal services, and a monthly income of $50.00 from other sources; that he had never been arrested or had any trouble with the authorities. Thereafter, the policy was received by Cayias from the Society and delivered to insured. Insured paid Cayias the promissory note given for the first semiannual premium.

Thereafter, the second and third semiannual premiums were paid when they became due. The third semiannual premium was paid by Zolintakis, who was substituted as beneficiary in place of Christ Orfanos, brother of the insured.

On July 16, 1935, the body of a man, later identified as the insured, whose skull had apparently been fractured, was found dead in a shack near a coal mining camp at National, Utah.

Claim was thereupon made by Zolintakis for payment under the double indemnity provision of the policy. The claim was denied.

The Society attempted to show that certain representations contained in the application were false, and that the policy was secured through fraud. It did establish that insured never lived at 126 West Second South Street, Salt Lake City, Utah, that he spent one month immediately prior to December 19, 1933, in the Salt Lake City jail on a conviction for a morals charge, and had a room in a hotel at Price, Utah,

from September 24 to October 9, 1933. Lingos, a witness for the Society, testified that insured only worked for him for a period of two weeks in January, 1934. This testimony, however, is in conflict with the statement of Lingos to the Society's investigator who testified that Lingos told him the insured worked for him for three, four, or five months. No other evidence was offered concerning the insured's whereabouts or employment during the balance of the year. The Society also introduced two compensation reports made by the medical examiner of an employer for compensation information, dated January 13, 1919, and November 15, 1919, in which the insured gave his age as 33 and 38, respectively.

The evidence disclosed that insured and Lingos knew each other in Greece; that Lingos had been engaged in the grocery business at 126 West Second South Street for about seven years; that whenever insured came to Salt Lake City he visited Lingos, and spent considerable time at the latter's store; and that at the date of the application and during three or four years immediately prior thereto insured had his mail addressed to 126 West Second South Street, Salt Lake City.

The principal contention of the Society is that insured secured the policy by fraud and misrepresentations of material facts.

By an express provision in the policy and by virtue of Section 43-3-24, supra, the statements complained of in the application, in the absence of fraud, are representations and not warranties.

■ A warranty in the law of insurance is a statement or stipulation in the policy which is breached unless absolutely true or literally fulfilled. A warranty may be either affirmative or promissory. The former affirms the existence of a fact at the time the policy is entered into; the latter requires that something be done or not done after the policy has taken effect. A breach of warranty avoids the insurer's liability under the policy. Sentinel Life Insurance Co. v. Blackmer, 10 Cir., 77 F.2d 347, 350.

■ In the law of insurance a misrepresentation by the insured is an oral or written statement of a material fact or condition affecting the risk made by the insured to the insurer which precedes and is not a part of the contract, unless it is expressly stipulated that it shall be, and is either intentionally untrue or made with a reckless disregard for its truth or falsity. Sentinel Life Insurance Co. v. Blackmer, supra.

■ A misrepresentation will not constitute a defense to an action on a policy of insurance unless it was intentionally untrue or was made with a reckless disregard for its truth or falsity.[1] Where an insured knowingly makes a material misrepresentation, proof of an actual, conscious purpose to deceive is not necessary.[2]

■ A material fact is any fact, the knowledge or ignorance of which would naturally influence the insurer's judgment in making the contract, in estimating the degree and character of the risk, or in fixing the rate of insurance.[3]

■ The Society contends the insured misrepresented his age. Under an express provision of the policy, if the age of the insured has been misstated, any benefits accruing under the policy are to be adjusted to correspond to those which would accrue under a similar policy which the premium paid would have purchased at the

[1] Chadwick v. Beneficial Life Insurance Co., 54 Utah 443, 181 P. 448, 450; Sentinel Life Insurance Co. v. Blackmer, 10 Cir., 77 F.3d 347, 351; Stewart v. American Life Insurance Co., 10 Cir., 89 F.2d 743, 748; Security Life Insurance Co. of America v. Brimmer, 8 Cir., 36 F.2d 176, 179; Wharton v. Ætna Life Insurance Co., 8 Cir., 48 F.2d 37, 42; Nonantum Investment Co. v. Maryland Casualty Co., 1 Cir., 56 F.2d 329, 334; Northwestern Mutual Life Insurance Co. v. West, 62 App.D.C. 381, 68 F.2d 428, 430; Cooley's Briefs on Insurance, 2d Ed., Vol. 3, p. 1901.

[2] Chadwick v. Beneficial Life Insurance Co., 56 Utah 480, 191 P. 240, 245; Atlantic Life Insurance Co. v. Hoefer, 4 Cir., 66 F.2d 464, 466; Columbian National Life Insurance Co. v. Rogers, 10 Cir., 93 F.2d 740, 741, 742; Kavakos v. Equitable Life Assur. Soc., 66 App.D.C. 380, 88 F.2d 762, 763; Mutual Life Insurance Co. v. Hilton-Green, 241 U.S. 613, 622, 36 S.Ct. 676, 60 L.Ed. 1202; Stewart v. American Life Ins. Co., supra.

[3] Penn Mutual Life Insurance Co. v. Mechanics' Savings Bank & Trust Co., 6 Cir., 72 F. 413, 428, 38 L.R.A. 33; New York Life Insurance Co. v. Cumins, 3 Cir., 24 F.2d 1, 2; Crowder v. National Life & Acc. Ins. Co., Tex.Civ.App., 90 S.W.2d 267, 270.

Society's rates for the insured's correct age. Hence, any misrepresentation of age is immaterial.

█ The Society next contends the insured made a false representation with respect to his residence. The evidence clearly shows that the statement as to residence was not strictly true. The insured did not live at 126 West Second South Street, Salt Lake City, as that was the grocery store of Lingos and no part thereof was devoted to living quarters. However, the evidence shows insured had known Lingos, the proprietor, for many years, had made his headquarters there whenever he was in Salt Lake City, was working there when the application was made, and had been receiving mail at that address for a period of approximately four years.

In Moulor v. American Life Insurance Co., 111 U.S. 335, 345, 4 S.Ct. 466, 28 L. Ed. 447, the court said:

"In one sense, that only is true which is conformable to the actual state of things. In that sense, a statement is untrue which does not express things exactly as they are. But in another and broader sense, the word 'true' is often used as a synonym of honest, sincere, not fraudulent."

See, also, Sentinel Life Insurance Co. v. Blackmer, 10 Cir., 77 F.2d 347.

While strictly speaking this representation was not true, we are of the opinion that reasonable men in the exercise of an honest judgment might reach different conclusions as to whether the insured intentionally misrepresented his place of residence and, therefore, the issue should have been submitted to the jury.[4]

█ The evidence did not justify a finding that such representation was material as a matter of law. The fact that a person lives at one address rather than at another would not affect the insurance risk or increase the premium rate, unless the actual place of residence was not conducive to a normal, healthy existence, or was a place of ill repute. There was no evidence as to conditions at the actual place of residence.

█ Finally, the Society contends the insured falsely represented that he was in the grocery business and had been so engaged for a period of one year. At the time the application was made insured actually worked at the Lingos Grocery Store and according to Lingos' testimony had been so engaged for a period of two weeks. According to the statement of Lingos to the Society's investigator insured had been so engaged for a period of three, four, or five months. With the exception of a period of one month while the insured was in the Salt Lake City jail, there is no evidence as to what he did during the remaining portion of the year. Again, we are of the opinion that reasonable men might reach different conclusions as to whether the insured intentionally made a false representation with respect to his occupation and that the issue should have been submitted to the jury.

█ The evidence did not establish that the representation, if false, was material as a matter of law. No evidence was offered to show that the insured was engaged in any business or occupation which would influence the Society in not making a contract, in estimating the degree and character of the risk, or in fixing the premium rate.

█ Where the actual occupation followed by insured is more hazardous than the one represented, the misrepresentation is material as a matter of law.[5] But where the actual occupation is no more hazardous than the one represented, the misrepresentation is not material as a matter of law.[6]

[4] Tacconi v. Salvation Army, 10 Cir., 95 F.2d 599, 600;
Travelers' Insurance Co. v. Bancroft, 10 Cir., 65 F.2d 963, 966;
Grand Trunk R. Co. v. Ives, 144 U.S. 408, 417, 12 S.Ct. 679, 36 L.Ed. 485.
[5] DePee v. National Life & Acc. Ins. Co., 144 Kan. 751, 62 P.2d 923;
Indiana National Life Ins. Co. v. Maines, 185 Ky. 180, 214 S.W. 820;
Calligaro v. Midland Casualty Co., 211 Wis. 319, 247 N.W. 846;
Elliott v. Frankfort, Marine, Acc. & Plate Glass Insurance Co., 172 Cal. 261, 156 P. 481, L.R.A.1916F, 1026;

United Security Life Ins. & Trust Co. v. Massey, 159 Va. 832, 164 S.E. 529, 167 S.E. 248, 85 A.L.R. 306;
Crowder v. National Life & Acc. Ins. Co., Tex.Civ.App., 90 S.W.2d 267.
[6] Eaid v. National Casualty Co., 122 Or. 547, 259 P. 902;
Phœnix Indemnity Co. v. Smith, 168 Md. 649, 179 A. 50;
Kingston v. Metropolitan Casualty Ins. Co., 117 Pa.Super. 504, 178 A. 151;
Fitzgerald v. Metropolitan Life Insurance Co., 90 Vt. 291, 98 A. 498, 505.

588

Counsel for the Society urge that Zolintakis is precluded from asserting that the representations were not material because he interposed objections to questions propounded to witnesses for the Society respecting the general custom and practice of insurance companies under a given state of facts, and questions as to what action the Society would have taken had it been apprised of certain facts. The latter questions were subject to objection. Stewart v. American Life Insurance Co., 10 Cir., 89 F.2d 743, 748. The questions with respect to the general custom and practice of insurance companies went beyond the alleged misrepresentations here involved and embraced assumed facts not established by the evidence and were also subject to objection.

The judgment is reversed with instructions to grant Zolintakis a new trial.

Reversed