## UNITED STATES v. DEPEW.
### No. 1659.

Circuit Court of Appeals, Tenth Circuit.
Dec. 27, 1938.

726

Thomas E. Walsh, of Washington, D. C. (Summerfield S. Alexander, U. S. Atty., R. T. McCluggage, Asst. U. S. Atty., of Topeka, Kan., Julius C. Martin, Director, Bureau of War Risk Litigation, of Wash-ington, D. C., Wilbur C. Pickett, Sp. Asst. to Atty. Gen., and Keith L. Seegmiller, Atty., Department of Justice, of Washington, D. C., on the brief), for the United States.

Lewis A. Hasty, of Wichita, Kan. (Roger P. Almond, of Wichita, Kan., on the brief), for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

Joseph Elbert Depew enlisted in the army on December 6, 1916, and was honorably discharged on June 4, 1920. He re-enlisted on October 20, 1920, and served successive enlistment periods until he was honorably discharged on September 20, 1932. In April, 1931, he made written application for a five-year convertible term policy of insurance. In answering questions propounded in the application, he stated that he was then in good health, and that he had never been treated for any disease of brain or nerves, throat or lungs, heart or blood vessels, stomach, liver, intestines, kidney or bladder, genito-urinary organs, skin, glands, ear or eye, or bones. The policy issued effective as of May 1st, and all premiums were paid on it through March, 1933. In February, 1933, the Director of Insurance purported to cancel the policy effective as of May 1, 1931, for fraud in the answers contained in the application. Insured appealed to the Administrator of Veterans' Affairs, and on May 8th, the Administrator's Board of Appeals approved the action of the Director. Insured subsequently filed this suit to recover on the policy. He died on April 26, 1934, and the action was revived in the name of Ola Margaret Depew, as administratrix of the estate of the deceased, and as the beneficiary named in the policy. She filed an amended and supplemental petition in which it was alleged, among other things, that the insured became totally and permanently disabled on August 8, 1931, while the policy was in full force and effect. By answer, the Government admitted the issuance of the policy, and the payment of premiums through March, 1933; denied total and permanent disability during the life of the policy; and affirmatively pleaded that the policy was obtained through fraud on the part of insured in stating in the application that he was then in good health and that he had not been treated for any of the diseases enumerated.

Trial by jury was waived. At the close of all the evidence the Government moved for judgment on the ground that the evidence showed as a matter of law that the policy was obtained by fraud. The court found generally for plaintiff, and specifically that insured became totally and permanently disabled on August 8, 1931, while the policy was in force. No specific finding was made concerning the issue of fraud in the answers in the application. Judgment was entered for plaintiff. The Government appealed and the single question is whether the policy was invalid for fraud in procuring it.

Insured had an eighth grade education, and his last employment before entering the service was that of fireman for a railroad company. He was a technical sergeant in the air corps of the army, at least from September, 1929, until the date of his discharge—the record not showing when he first acquired such position. Hospital records in the office of the Adjutant General showed these facts. Insured was in a hospital at Fort McDowell from December 20, 1916, to March 19, 1917, and the final diagnosis was pneumonia, lobar, right lower lobe, following measles. He was in a hospital at Fort Sam Houston from January 4, to March 30, 1926, and the final diagnosis was cystitis, acute, cause undetermined. He complained of frequent urination, pain and blood following urination, and tenderness over cystic area. One objective symptom was a few moist rales in left apex of lungs. He was again in the hospital at Fort Sam Houston from April 21, to May 6, 1927. The final diagnosis was appendicitis, acute gangrenous, and an appendectomy was performed. He returned to the hospital on May 12th and remained there until July 13, 1927, apparently receiving further treatment for his condition following the appendectomy. He was again in the hospital from January 20, to April 11, 1928, and the diagnosis was cholangitis, acute, catarrhal, cause undetermined, bronchiectasis, middle and lower lobes, right lung, moderately severe, LOD. He returned to the hospital on July 9, 1928, and remained there until September 15th. He gave a history of flu in 1919, followed by a cough which had continued until the then present time; that before his admission he raised about three cups of sputum per day; that following his discharge three months previously, he continued postural drainage twice daily; that three times there had been blood in it which

seemed to be fresh blood, the last time being ten days prior to the date on which he gave the history; that some clumps of pus were red and others only streaked with blood; and that his cough was then a little more severe and the drainage a little more which caused him to return to that ward. He had a chronic cough and expectorated, and postural drainage was again employed. The diagnosis was substantially identical with that on the last preceding hospitalization. He was hospitalized at Brooks Field from June 5, to December 22, 1930. He gave a history of pneumonia in 1908, flu in 1919, appendectomy in 1927, fever for preceding month, excessive sweating at night, soreness in lower half of right chest, severe cough, severe expectoration, color gray to green, tires very easily, had been taking postural drainage for preceding three years, had been told that he had bronchiectasis. The further history given was that he developed a cough but did not raise sputum until 1923, at which time he began expectorating large quantities of a greenish-gray color; that it was not blood streaked until 1928; that the night sweats began about two months prior to the date on which the history was given; that he was admitted to a hospital in 1927 with lung abscess, right side, and remained there four months; that he was again admitted in 1928 for the same thing; that he received drainage, was continuously at rest, and gained weight; and that he had not received hospitalization since that time. The final diagnosis was abscess, pulmonary, acute, R.L.L. healed, bronchiectasis, multiple, large, sacculations, R.L.L., small R.M.L., pleurisy, chronic, fibrous, at base, secondary to 2, myocarditis, acute, toxic, dental caries, gingivitis, simple. The record further discloses a spinal junction in 1930, temperature as rule high in evenings, and pus draining from lungs in certain positions; also that between December 3, 1930, and February 19, 1931, he submitted to a series of bronchoscopic aspirations of pus from right lung, followed by injections of lipiodal, and during a part of that time he expectorated about half a cup daily. Insured was again taken to the hospital at Fort Sam Houston on August 8, 1931. He remained there until May, 1932, was then transferred to Fitzsimons hospital in Colorado, and remained there until his discharge from the army in September. He gave a history at Fitzsimons hospital of a cough which began in 1922, and had been considered to have an abscess since 1926.

He was in bed and ran a temperature most of the time after being discharged, and hemorrhaged frequently until his death.

Insured submitted an application for disability compensation in October, 1932. Inquiry was made therein as to whether he received treatment while in the service and if so to give the name, number, or location of the hospital, first-aid station, dressing station, or infirmary, or the organization to which it was attached, the dates of treatment, and the nature of sickness, disease, or injury. He stated in response: "Rt. Lung and eyes, 1st aid, 2nd En. 13th F. A. Cunel, France, 10/30/18, Field Hosp. No. 28, 1/2/19, Field Hosp. No. 33, 2/26/19, Eva. Hosp. No. 8, 3/1/19, Evac. Hosp. No. 9, 4/12/19, Base Hosp. No. 100, 4/2/19, Base Hosp. No. 65, 5/4/19, Base Hosp. Camp Merritt, Base Hosp. Camp Pike Ark., 5/24/19."

■ The general finding in favor of plaintiff covered the issue of fraud in making a misrepresentation in the application and was equivalent to a special finding on that question of fact. Accordingly, the evidence and its fair inferences must be viewed in the light most favorable to plaintiff. But when viewed in that manner it affords no basis on which reasonable minds may differ as to whether insured knew at the time he made such answers that he had been treated for a disease of the lungs. It shows inescapably and conclusively that he knew he had received treatment for a disease of that kind.

■ The statement that there had not been treatment for a disease of the enumerated parts of the body was a representation as distinguished from a warranty; and it is well settled that a misrepresentation will not constitute a defense to an action on a policy unless it was intentionally untrue or was made with a reckless disregard for its truth or falsity. Sentinel Life Ins. Co. v. Blackmer, 10 Cir., 77 F.2d 347; Zolintakis v. Equitable Life Assurance Society, 10 Cir., 97 F.2d 583.

■■ The purpose of propounding questions of the kind under consideration and of securing answers to them is to elicit relevant and material information which may not be disclosed by the medical examination. Such information may well furnish the basis for determining whether further examination or inquiry should be made; and that being its function, it will be presumed that the Government took it into consideration and relied upon it in the issuance of the policy. An untrue representation of that kind knowingly made is material as a matter of law without proof, and its submission implies an intent to deceive. Shaner v. West Coast Life Ins. Co., 10 Cir., 73 F.2d 681.

■■ A member of the medical corps at Fort Sam Houston, who was personally acquainted with insured, made the medical examination in connection with the application for the insurance. That fact, coupled with the additional fact that the hospital records were in the office of the Adjutant General, is relied upon to sustain the contention that the Government cannot escape liability for fraud in the answers for the reason that it had full information in respect of the physical condition of insured and of his treatments for diseases. But the Government cannot be bound by the knowledge which the medical officer who made the examination acquired through acquaintance with insured apart from such examination. And the officers of the Veterans' Administration were not required to search the records of another department of the Government for the purpose of ascertaining whether the representations made in the application were true or false. United States v. Riggins, 9 Cir., 65 F.2d 750.

The judgment is reversed and the cause remanded with instructions to grant a new trial.